JANET A. SULLIVAN *vs.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

, Suffolk.    March 8, 1961. — May 18, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Insurance,* Life insurance: application, condition, misrepresentation.
. *Evidence,* Relevancy and materiality.   *Practice, Civil,* Requests, rulings
and instructions.   *Law or Fact.*

The facts that an original application for a subsequently issued life insur-
ance policy was signed by the applicant in blank and that, although he
supplied truthful information to the insurance company's examining
physician, the physician wrote false answers to medical questions in the
application would not bar an action on the policy on the asserted ground
that no contract of insurance had existed between the applicant and
the insurance company.   [652, 654–655]

An actual intent to deceive on the part of an applicant for a life insurance
policy within G. L. c. 175, § 186, would not be shown as a matter of law
by the mere fact that the application contained false answers to medical
questions as to matters within the applicant's knowledge.   [655–656]

In an action on a life insurance policy, evidence as to previous dealings
with the defendant insurer through certain of its agents was relevant
on the issue whether there was an actual intent to deceive on the part of
the insured in making false answers to questions in the application for
the policy in suit.   [656]

The materiality of certain medical matters dealt with in questions in an
application for a life insurance policy was for the jury in an action on
the policy defended on the ground of falsity of the answers to such
questions.   [656]

An exception in an action to refusal to give in terms a requested instruc-
tion covered in substance by the charge to the jury must be overruled.
[656]

The judge at the trial of an action cannot be required to comment in his
charge on a mere fragment of the evidence on an issue.   [657]

No error was shown in an action in refusal of a requested instruction in-
applicable to the matters in evidence.   [657]

Even if a question about "symptoms such as . . . severe headaches" in an
application for a life insurance policy by one who died of a cerebral
aneurysm was material, it could not properly be ruled in an action on
the policy that a false answer to the question required a verdict for the
defendant: it was a question for the jury whether the misrepresentation,

under G. L. c. 175, § 186, was made with intent to deceive or the matter misrepresented increased the risk of loss.   [657]

In an action on a life insurance policy defended on the ground of a misrepresentation in the application for the policy, the defendant must prove that the misrepresentation was material besides proving as required by G. L. c. 175, § 186, that it was made with intent to deceive or that the matter misrepresented increased the risk of loss.   [657–658]

CONTRACT.   Writ in the Superior Court dated September 4, 1957.

The action was tried before *Brogna,* J.

*Edward J. Duggan,* for the defendant.

*David W. Walsh,* (*Walter J. Hurley* with him,) for the plaintiff.

SPIEGEL, J.   The defendant issued a policy on the life of Mark Sullivan on April 10, 1957.   He died as a result of a ruptured intracranial aneurysm on May 8, 1957.   This action is by his widow, the beneficiary named in the policy. The defendant relies upon the affirmative defence set forth in its answer that in the application for the policy the insured falsely represented that his then occupation was "Manager–Office," that he had not followed any other occupations in the five years prior to the date the application was signed by him, that he had never had or been told that he had, or consulted or been treated by a physician for, nervous or mental symptoms such as dizziness or severe headaches, that he had never had any X-rays, electrocardiograms or other studies, and that during the five years prior to the date the application was signed he had not consulted or been treated or examined by any physician, and had not attended or been treated or confined in any hospital.   The defendant alleges that these misrepresentations were made with actual intent to deceive and that the matters misrepresented increased the risk of loss.   G. L. (Ter. Ed.) c. 175, § 186.   The defendant also relies on a general denial to the plaintiff's declaration.   After a verdict for the plaintiff, the case is here upon exceptions to the admission of evidence, to the denial of the defendant's motion for a directed verdict, to the failure to give certain requests for instructions, and to portions of the charge.

By its terms the application was made the "basis for" and "a part of" any contract of insurance. The plaintiff testified that the insured signed the application in blank; that he supplied the defendant's examining physician with truthful information in answer to the questions asked; and that the answers written by the examining physician as they presently appear in the application were false.

The plaintiff testified that on February 20, 1957, the insured complained of headaches and nausea to the plaintiff who talked by telephone with a Dr. Crismond; that on February 21, 1957, Dr. Crismond called at her home, examined the insured, diagnosed the trouble to be a virus and advised liquids and rest; that the doctor dropped in again but her husband was "then up and around"; that on March 5, 1957, the plaintiff asked Dr. Crismond to have her husband admitted to a hospital for a checkup because the insured had been injured in 1948 sustaining serious head injuries in addition to back and leg injuries and had not had a checkup since that time; and that the doctor reluctantly agreed to have the insured admitted to a hospital for the purpose of a checkup. Dr. Crismond testified that when he first saw the insured he complained of severe intermittent frontal headaches; that the insured's blood pressure was elevated; that he prescribed a medication to relieve the headaches until their cause could be discovered and a tranquilizer to determine whether the headaches were emotional or organic; that on a subsequent visit the headache and elevated blood pressure persisted and had become a cause of concern to the insured; that he saw the insured again on March 5, 1957, but could not recall the particulars of that visit; that he admitted the insured to the Carney Hospital on March 10, 1957, for diagnostic studies to determine the cause of the insured's intermittent high blood pressure and severe headaches. While at the Carney Hospital the insured underwent tests including X-rays, an electroencephalogram, an electrocardiogram, blood and urine studies. The insured was released from the hospital March 15, 1957, the cause of his headaches still undetermined. The plaintiff

testified that after her husband's release from the hospital the insured went to work every day, went out occasionally in the evening and took full part in her daughter's wedding, that he made no complaints of headaches to her, and that Dr. Crismond told her there was nothing to worry about.

On March 18, 1957, the insured signed Part A, statements to the company's agent, of the insurance application and on March 24, 1957, Part B, statements to the examining physician. The insurance policy was issued on April 10, 1957, and delivered on April 19, 1957, at which time the premium was paid.

The insured suddenly collapsed in his home on the morning of April 22, 1957, and was taken unconscious to the Quincy City Hospital. After a period of uncertainty his trouble was diagnosed by a neurological surgeon to be cerebral aneurysm. He was transferred to Carney Hospital on May 6, 1957, where an operation was performed on him the following day. He died on May 8, 1957.

We first consider the denial of the defendant's motion for a directed verdict. The defendant argues that no contract of insurance existed between it and the insured because, based on the plaintiff's own testimony, the statements inserted by the examining physician in answer to the questions in the application were not the answers of the insured and were answers which he never told the examining physician to insert, and that the insured signed this part of the application before it was filled in.

There is a question whether the defendant stipulated that a policy of insurance was "issued." Whether it existed as a contract is of sufficient import to merit a decision despite this stipulation. In jurisdictions outside Massachusetts, the great weight of authority holds that when an applicant gives correct oral answers to an examining physician but the answers are incorrectly recorded by him the insurance company cannot rely on the falsity of such answers to avoid liability under the policy issued upon the application. See annotation 33 A. L. R. 2d 615, 658; 148 A. L. R. 507; 117 A. L. R. 790; Williston, Contracts

(Rev. ed.) § 751, p. 2130; Appleman, Insurance Law and Practice, §§ 9401, 9402, 9409–9412, 9415, 9416.

The line of cases in Massachusetts typified by *Bogosian v. New York Life Ins. Co.* 315 Mass. 375, and cases cited therein, is distinguishable. These cases involve applications for reinstatement of lapsed policies and other conditions such as proof of loss in which truthful answers are a condition precedent to recovery. See *Cooper v. Prudential Ins. Co.* 329 Mass. 301; *Bogosian v. New York Life Ins. Co.*, *supra*. In such cases if the conditions precedent have not been complied with the insured or beneficiary cannot recover. In the reinstatement applications if the condition precedent of truthful answers is not met the application is invalid. Original applications for insurance, such as the one in the instant case, do not make truth in the answers to the questions in the application a condition precedent. The answers to the questions are merely representations or warranties, and not conditions precedent. It has been held that G. L. (Ter. Ed.) c. 175, § 186, does not apply where the truth of certain statements is made a condition precedent to the reinstatement of a policy. *Shurdut v. John Hancock Mut. Life Ins. Co.* 320 Mass. 728, 732.

Original applications for insurance, however, have been treated differently. There have been many cases subsequent to *Shurdut v. John Hancock Mut. Life Ins. Co.*, *supra*, treating with original applications for insurance wherein this court applied G. L. (Ter. Ed.) c. 175, § 186, requiring proof that there was either an actual intent to deceive or an increase in the risk of loss in order for the insurer to avoid the policy. See *Kaufman v. National Cas. Co.*, *ante*, 412, 416; *Lennon v. John Hancock Mut. Life Ins. Co.* 339 Mass. 37; *Rappe v. Metropolitan Life Ins. Co.* 322 Mass. 438; *Davidson v. Massachusetts Cas. Ins. Co.* 325 Mass. 115; *Quintiliani v. John Hancock Mut. Life Ins. Co.* 340 Mass. 93. Since G. L. (Ter. Ed.) c. 175, § 186, applies only to representations or warranties and not to conditions precedent (*Giannelli v. Metropolitan Life Ins. Co.* 307 Mass. 18, 22) it logically follows that answers to questions

in an original application for insurance are either representations or warranties and not conditions precedent.

The majority rule set out above does not operate to bind an insurer where there has been a breach of the condition that the policy was not to take effect as a contract of insurance unless the insured was in good health at the time the policy was delivered. 148 A. L. R. 507, 512. Therefore the majority rule does not come into conflict with the Massachusetts cases just discussed.

Under the majority doctrine in the circumstances of the present case it was a question of fact for the jury whether truthful answers were given by the insured and improperly recorded by an agent of the defendant.

We adopt the majority doctrine, for to hold that an insurance company can avoid contractual liability on the grounds argued by the defendant is to endanger a great many existing and future contracts of insurance. The adoption of this rule in other States was based in part upon general principles of equity and estoppel and in part for the reasons similar to those underlying c. 175, § 186, and statutes of a similar nature. It would be unfair to permit an insurance company to avoid a contract of insurance because of the failure of a company's own insurance agent or examining physician correctly to record the answers given by an applicant. In this highly competitive business (see 62 Harv. L. Rev. 87, 91, 93) with the complexity of the varied types of insurance existing today, it has been recognized that applicants frequently do in fact rely upon a company's representatives. The courts have been unwilling to permit the companies to assert as a defence the inadequate or improper performance of these representatives.

Another facet to be considered is that by holding that no insurance contract exists when an agent or examining physician alters answers truthfully given would place an applicant who acts honestly in a worse position than an applicant who knowingly supplies untruthful answers to questions in an application. In the latter case an insurance company must prove an affirmative defence that the

misrepresentations were made with an actual intent to deceive or that the matters misrepresented increased the risk of loss.   G. L. (Ter. Ed.) c. 175, § 186.

A holding that a contract of insurance did exist in the present case based on the application actually signed by the insured does not prejudice the defendant, since it could still demonstrate that the insured did supply the untruthful answers with an actual intent to deceive or that the matters misrepresented increased the risk of loss.

The principle of the majority doctrine gains support from the rule that where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it.   See *Gardner* v. *Beacon Trust Co.* 190 Mass. 27, 29; *Jerome* v. *Eastern Fin. Corp.* 317 Mass. 364, 370.   The examining physician, who wrote in the answers to the questions in the application, was the agent of the defendant. *Giannelli* v. *Metropolitan Life Ins. Co.* 307 Mass. 18, 21.

The trial judge did not err in refusing to direct a verdict for the defendant based on this first argument.

The defendant next argues that a verdict should have been directed in its favor because as a matter of law the insured possessed an actual intent to deceive the defendant. The defendant in a rather circuitous line of reasoning maintains that since the statements in the application were admittedly false and concerned facts of which the applicant had personal knowledge, they were misrepresentations made with knowledge of their falsity and therefore no further proof of an actual intent to deceive was required. This argument ignores the plaintiff's contention that the insured did not make the representations and therefore they were not knowingly false or made with intent to deceive.   *Tyler* v. *Ideal Benefit Assn.* 172 Mass. 536, 537. *Quintiliani* v. *John Hancock Mut. Life Ins. Co.* 340 Mass. 93.   It also unduly limits the burden of the affirmative defence of the defendant by necessitating only proof of falsity in a matter the truth of which is known to the applicant and does not require proof of actual intent to deceive. G. L. (Ter. Ed.) c. 175, § 186.   ''An incorrect statement

does not necessarily indicate actual intent to deceive."
*Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440.
*Davidson* v. *Massachusetts Cas. Ins. Co.* 325 Mass. 115, 119.
The issue of intent to deceive was properly left to the jury.

The defendant excepted to the admission in evidence of
testimony from the plaintiff concerning prior dealings with
the defendant through two of its agents. This testimony
tended to show how and on whose initiative the discussion
concerning the insurance policy in question first arose. It
had some relevancy on the issue of intent to deceive on the
part of the insured and was therefore admissible. See
*Brown* v. *Greenfield Life Assn.* 172 Mass. 498, 502; *Seimer*
v. *James Dickinson Farm Mortgage Co.* 299 Fed. 651, 657.
Cf. *Davidson* v. *Massachusetts Cas. Ins. Co.* 325 Mass. 115,
122–123.

At the close of the evidence the defendant presented
numerous requests for instructions and excepted to the
judge's refusal to give fifteen of these requests.

Request numbered 2[1] could not have been given as phrased
since it omits the reference to intent to deceive. *Quintili-
ani* v. *John Hancock Mut. Life Ins. Co.* 340 Mass. 93, 95.

Request numbered 9[2] required the judge to make a ruling
of law that certain matters inquired about were material.
This was a question for the jury and was properly denied.
*Kidder* v. *Supreme Commandery United Order of the
Golden Cross,* 192 Mass. 326, 334.

Requests numbered 10, 11, 12, 13, and 20 were in sub-
stance covered in the charge to the jury, so exceptions to
the refusal of the trial judge to give them must be over-
ruled.

The trial judge did not err in refusing to give requests
numbered 15, 16, 17, 18, and 19, since they ask for a ruling
that if an insured makes a misrepresentation with knowl-

---

[1] "2. If you find that answers in the application for the policy in suit were
not made by Mark J. Sullivan, or were made without his authority or consent,
you must find for the defendant." REPORTER.

[2] "9. The matters inquired about in the application relating to the occupa-
tion, bodily condition, health or medical history of the insured were material
matters, and if there were any misrepresentations on these matters with inten-
tion to deceive, the plaintiff cannot recover." REPORTER.

edge of its falsity there must be a verdict for the insurer. The issue cannot be decided without a determination of the presence or absence of an actual intent to deceive. *Quintiliani* v. *John Hancock Mut. Life Ins. Co.* 340 Mass. 93, 94.

Request numbered 25 asked the trial judge to single out for comment a portion of the evidence. The trial judge was not required and properly refused to do so. *Burgess* v. *Giovannucci*, 314 Mass. 252, 255.

Requests numbered 28[3] and 29[4] were properly denied by the court. Request numbered 28 is inapplicable to the evidence since the issue before the trial judge was whether the matter misrepresented in the application increased the risk of loss. There was no question in the application inquiring about cerebral aneurysm and therefore there could be no misrepresentation on this point. Request numbered 29 could not be given by the trial judge since the question is not whether a misrepresentation on the application may be deemed to relate to cerebral aneurysm, but rather whether the misrepresentation itself was made with an actual intent to deceive or the matter misrepresented increased the risk of loss. There are questions in an application the answers to which might reveal symptoms relating to a variety of serious ailments. In many instances the causal relation between the symptoms and the ailment can be determined only in retrospect.

The only question in the application that the defendant could maintain had any bearing on cerebral aneurysm was the one that asked about "symptoms such as . . . severe headaches." Whether a misrepresentation as to severe headaches increased the risk of loss was a question of fact for the jury.

The defendant excepted to that portion of the charge to the jury which stated that a misrepresentation must be

---

[3] "28. The risk of loss of a company issuing a policy of insurance on the life of a person suffering from a cerebral aneurysm is increased as a matter of law." REPORTER.

[4] "29. If you find that any of the misrepresentations made by Mark J. Sullivan in his application for the policy in suit related to a cerebral aneurysm, there must be a verdict for the defendant." REPORTER.

material before a policy of insurance could be avoided for intent to deceive or because of increase in the risk of loss. This is a correct statement of the law. General Laws (Ter. Ed.) c. 175, § 186, leaves unchanged the common law duty upon insurance companies to show that a misrepresentation is material before an insurance policy can be avoided. *Metropolitan Life Ins. Co. v. Burno,* 309 Mass. 7, 11. The statute imposes an additional duty upon an insurance company to show an actual intent to deceive or an increase in the risk of loss. There is nothing to the contrary in the cases cited by the defendant.

*Exceptions overruled.*