INDUSTRON CORPORATION *vs.* WALTHAM DOOR AND
WINDOW CO., INC.

Middlesex.   January 11, 1963. — May 3, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Bailment. Contract,* Of bailment. *Practice, Civil,* Requests, rulings and
instructions.

Evidence that a manufacturer in immediate need of a certain type of
machine obtained a loan of such machine from a dealer desirous of
selling it or a larger machine to the manufacturer and that the manu-
facturer promised "to return . . . [the machine] in the same condition
as it was received" warranted a finding of a bailment of the machine
under a bailment contract making the manufacturer liable to the dealer
for failure to return the machine in proper condition irrespective of the
manufacturer's fault; and upon such a finding the manufacturer would
be liable to the dealer for the value of the machine where it was destroyed
by a fire of unknown origin while still in the manufacturer's plant.
[20–21]

An exception in an action to refusal to give in terms a requested instruction
covered in substance by the charge to the jury must be overruled.
[21–22]

CONTRACT. Writ in the Superior Court dated August 4,
1959.

The action was tried before *Gourdin, J.*

*William A. Cotter, Jr.,* for the defendant.

*Herman Snyder* for the plaintiff.

SPIEGEL, J. This is an action of contract to recover the
value of a machine and tubes destroyed by fire. A jury re-
turned a verdict for the plaintiff in the amount of $13,860.10.
The case is here upon exceptions to the denial of the defend-
ant's motion for a directed verdict and the refusal to give
various requests for instructions.

There was testimony that the plaintiff is engaged in the
application of high frequency electric power to industrial
processes. The defendant manufactures wood products.

In November of 1957, Paul D. Zottu, president of the plaintiff, met Cosmo Caterino, president of the defendant, at the plaintiff's plant at which time a large "gluing machine" was demonstrated to Caterino. Later, during the first week of January, 1958, Caterino returned to the plant and talked with Zottu and to the plaintiff's treasurer, who was also the chief engineer. Caterino inquired about the possibility of obtaining gluing equipment stating that "they had a prospective order in Long Island . . . from a housing project and he wanted to know what could be done to provide him with a piece of gluing equipment to complete an order of this sort." He was told that the machine he had observed previously had been sold but that a similar, though smaller, machine would soon be available. Although he questioned whether the machine would be large enough, Caterino asked if he could "borrow" it for a month. Zottu testified that Caterino said "he was sure that he could use this machine, and at any rate, if he needed a larger machine, he would return this machine in almost new condition, and place an order for a larger machine." The plaintiff's treasurer testified that "Caterino said he did need a machine in a hurry because he said he had a chance to get a large order from a company somewhere in Long Island, to supply shelving, and they had to have a machine to do the job." After Caterino gave the plaintiff assurances that "he would purchase it if he liked it or return it and then buy a larger one" he was told "[w]e will go ahead with you as long as we are sure of making a sale." Caterino then said, "we will take very good care of it, and we will return it in the same condition as it was received . . ., but barring general cleaning, why it will be returned in excellent condition." Caterino testified that he never agreed to purchase the machine within thirty days; that "I was not interested in that (small) machine under any circumstances"; and that "I never said that if I didn't purchase the machine I would return it in the same good order and condition, or that I would return it in the same good condition, wear and tear excepted." On cross-examination Caterino admitted

that his firm had "had an order for a substantial amount of shelving to be shipped to Long Island and they wanted to get it out as rapidly as possible; that they didn't expect to buy this particular machine and did expect to return it."

"After the machine was finished" it was installed in the defendant's plant on or about February 5, 1958. The plaintiff sent a notice to its exclusive sales agent stating in substance that it had supplied the defendant with a $13,806.10 glue machine and that "this machine is loaned to the customer for test purposes, and remains the property of Industron Corporation until a decision is made in 30 days to purchase or reject the machine." On February 10, 1958, the machine was destroyed by a fire in the defendant's plant. "No evidence was introduced as to the cause . . . of the fire." The value of the machine is not in dispute.

Viewing the evidence most favorable to the plaintiff, the jury could have found that the parties created a bailment of the machine for their mutual benefit and the defendant, as bailee, had agreed to return the machine "in the same condition as it was received." In *Perreault* v. *Circle Club, Inc.* 326 Mass. 458, the lessee of a television set agreed to "surrender to the lessor the said equipment in good order, repair and condition in all respects, reasonable wear and tear excepted." The set was stolen from the defendant's premises without negligence or other fault of the defendant. Although recognizing that the "weight of authority" is to the contrary, this court held that a bailee who had agreed to return the goods in the same condition as when received is liable for loss or damage subsequently occurring, even though it may have been without his fault. The defendant seeks to avoid the application of the rule in the *Perreault* case by asserting that the controversy is governed by the Uniform Sales Act in effect at the time. Specifically, the defendant relies upon G. L. c. 106, § 21, Rule 3 (2),[1] which is

---

[1] The portion of § 21, Rule 3 (2), upon which the defendant relies provides: "When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer — (a) When he signifies his approval or acceptance to the seller . . . (b) . . . if a time has been fixed for the return of the goods, on the expiration of such time . . . ."

concerned with ''goods . . . delivered to the buyer on approval,'' and § 24. The argument that the machine was delivered to the defendant upon approval completely ignores the testimony of the defendant's president that he ''was not interested in that (small) machine under any circumstances'' and ''didn't expect to buy this particular machine and did expect to return it.'' Even assuming a delivery upon approval, the defendant's argument still fails. Section 24 of the Sales Act provides in part ''[*u*]*nless otherwise agreed,* the goods remain at the seller's risk until the property therein passes to the buyer . . .'' (emphasis added). The same evidence which would have enabled the jury to find that the defendant had agreed to ''return it in the same condition as it was received'' would have supported a finding that the defendant had ''otherwise agreed'' within the meaning of § 24. There was no error in the denial of the defendant's motion for a directed verdict.

The defendant excepted to the refusal to give the following of its requested instructions to the jury: ''3. No bailee is an insurer of the goods left with him, but on the contrary the bailee becomes liable for the loss of the goods only in cases in which the bailee is negligent.'' ''5. If there is no evidence of negligence on the part of the bailee then the bailor cannot recover. 6. A bailee is liable only for negligence unless by express agreement his liability is enlarged.'' ''8. The existence of some negligence on the part of the defendant is an essential element of the plaintiff's case.''

Except for No. 6 the requests would require the jury to find negligence on the part of the defendant in order for the plaintiff to recover. Our discussion of the *Perreault* case, *supra,* points out that negligence need not be shown for the plaintiff to prevail. The trial judge's charge to the jury correctly stated the law in the event the jury found an absolute promise to return the machine in the same condition, and the standard of due care if the jury found the defendant did not make such a promise. To the extent that request No. 6 accurately states the law, it was in substance covered in the charge to the jury, so the exception to the

refusal of the trial judge to give this request must be over-ruled. *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 656.

The only other requested instruction which the defendant contends should have been given reads: "7. When the parties from the beginning contemplated the continued existence of the machinery in question as the foundation of what was to be done, then in the absence of any warranty that the machinery shall exist, the agreement is to be con-strued not as a positive one but subject to an implied condi-tion that the parties shall be excused in case, before breach performance becomes impossible from the accidental per-ishing of the machinery without fault of either party." Whatever applicability this rule may have in some in-stances, it does not correctly state the law where the bailee makes an express agreement to return goods in the same condition as when received and thereby enlarges his liabil-ity. *Amiro* v. *Crowley,* 256 Mass. 53, 56. There was no error in the refusal to give this instruction.

*Exceptions overruled.*