*Northern District*
No. 5835
**ROBERT J. LUCIA**
v.
**JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY**
May 29, 1964

*Present*: Brooks, P. J., Eno & Connolly, JJ.
Case tried to *McKinney, J.* in the District Court of Southern Essex. No. 2941.

*Connolly, J.* The plaintiff, in this action of contract, seeks to recover as beneficiary, the death benefit provided by an insurance policy issued by the defendant and covering the life of his infant son.

The defendant, relying upon the statutory defense provided by G. L. c. 175, §186, alleged in its answer that there were mis-

representations in answers to questions in the application—especially with reference to deformities, illnesses, injuries, diseases, physician's attendance, hospital confinement and surgical operations—which were made with intent to deceive the defendant or increased the risk of loss.

There was evidence from the wife of the plaintiff, which he adopted, that the infant in question was born with a cleft lip and palate. Within a day or two of his birth, he was taken to the Children's Hospital where he remained for four weeks. While he was at the Children's Hospital, he underwent an operation for a hernia for which permission was given by the plaintiff's wife.

An agent of the defendant called upon the plaintiff and his wife when the infant returned home. There he wrote out an application for the insurance policy in suit. The plaintiff supplied the agent the true facts in connection with the medical history of the infant but the agent, in filling out the application, made false statements in it in reference to that history. The policy and application were introduced in evidence by the plaintiff.

The following questions and answers appear in the application:

| | | | Ans. |
|---|---|---|---|
| Ques. 7. | Is proposed insured | | |
| | (a) | now in good health? | "Yes" |
| | (d) | Deaf, dumb, blind or deformed? | "No" |
| Ques. 8. | Has the proposed insured: | | |
| | (a) | Ever had any illness or disease? | "No" |

(b) Ever consulted or been treated or examined by any physician or practitioner?     "No"

(c) Ever been treated or confined in any hospital, clinic or similar institution?     "No"

(d) Ever had any surgical operation?     "No"

The application which was attached to the policy M4 567 827 contained the following provisions:

"A.  The foregoing statements and answers are complete, true and correctly recorded, and with Part B of this application, shall form the basis for and be a part of any contract of insurance.

C.  No agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability. Notice to or knowledge of any agent or medical examiner whenever given is not notice to or knowledge of the company. All statements and answers in this application are true and complete and I assent to this application."

This application was signed by Robert J. Lucia.

The defendant's evidence from a medical underwriter for the John Hancock Mutual Life Insurance Company was to the effect that the operation, hare lip and cleft palate was a material matter which increased the

risk of loss to the defendant. The defendant also put into evidence the Children's Hospital record of Robert J. Lucia, the insured, showing his confinement there from May 27 to June 23, 1960 and which recorded that the insured during that time had two operations —a gastrectomy and laparotomy, central nervous system disorder, a misshapen head, brain damage, convulsions, a hare lip and a cleft palate.

The following stipulation was entered into by counsel:

1. The insured, Robert J. Lucia, died December 30, 1960.
2. That due proof was duly made by submitting to the defendant the death certificate and the proofs of death.
3. That photostatic copies of John Hancock policy No. M4 567 827 may be admitted in evidence with the application attached thereto as the original thereof.
4. That the insured was born May 24, 1960.
5. That all premiums have been duly paid on the said policy.
6. That on July 19, 1960 an application was written applying for insurance on the life of Robert James Lucia by Raymond Lennon.
7. That Robert J. Lucia, the insured's father, signed the above application.
8. That policy No. M4 567 827 was delivered on or about July 30, 1960.
9. That no part of the policy has ever been paid.
10. That Agent Raymond Lennon had no express

authority other than to record the answers to questions as given to him.

It was also agreed by counsel for the plaintiff in open court that both the father and mother of the insured knew at the time of the application that the insured had a hare lip and that a surgical operation had been performed on him.

There was testimony of the plaintiff's wife, admitted over the objection of the defendant, relating to a conversation she had with the insurance agent who took the application. In the course of this conversation, she called the attention of the agent to the fact that the baby had been in the hospital and had deformities. According to her testimony, he answered "As long as the baby is in good health now, that if everything was known was written on a policy, very few people would get an insurance policy."

There was testimony of the plaintiff, admitted over the objection of the defendant, which was to the effect that when the application, complete except for signature, was submitted to him by the agent for his signature, he questioned the agent concerning the validity of such an application. He testified he stated to the agent that the agent knew the baby's medical history. To which the agent asked, "Is the baby in good health now?" To this the plaintiff replied in the affirmative except for the cosmetic defect which would be remedied when the baby had gained some weight.

The following requests for rulings were denied by the trial judge:

14. The evidence requires a finding that the applicant's answer to question No. 7(a) in the application was false, and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, 322 Mass. 438.

15. The evidence requires a finding that the applicant's answer to question No. 7(d) in the application was false and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, supra.

16. The evidence requires a finding that the applicant's answer to question No. 8(a) in the application was false and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, supra.

17. The evidence requires a finding that the applicant's answer to question No. 8(b) in the application was false and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, supra.

18. The evidence requires a finding that the applicant's answer to question No. 8(c) in the application was false and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, supra.

19. The evidence requires a finding that the applicant's answer to question No. 8(d) in the application was false and that this answer was a misrepresentation. *Rappe v. Met. L. Ins. Co.*, supra.

26. Evidence, from any source, is not admissible in this case to contradict the answers to

questions 7(a), 7(d), 8(a), 8(b), 8(c) and 8(d) which appear in the photostatic copy of Part B of the application attached to policy No. M4 567 827.

27. As a matter of law Robert J. Lucia had a duty to read the photostatic copy of the application for insurance attached to policy No. M4 567 827 within a reasonable time after it was delivered to him on or about July 30, 1960 and if he failed to do so, or, if he did so and did not make known to the defendant that in Part B of the application answers to questions 7(a), 7(d), 8(a), 8(b), 8(c) and 8(d) were not true, or were not complete or were not correctly recorded, he cannot introduce evidence contradicting these answers as they appear in the photostatic copy of the application.

34. The evidence warrants a finding for the defendant.

In allowing another request 23 the trial judge stated:

"I find as a fact that the defendant's agent failed to record correctly plaintiff's answers and that as a matter of law, the defendant cannot avoid contractual liability because of such failure."

The trial judge found for the plaintiff.

The defendant claims to be aggrieved because of the admission of the testimony cited above and the denial of its requests.

We do not consider the admission of the testimony objected to by the defendant as error. While the knowledge of the agent of the medical history and physical condition

of the baby was not material, the testimony was relevant to the main issue of misrepresentation with intent to deceive. *Quintiliani v. John Hancock Mut. L. Ins. Co.*, 340 Mass. 93; *Vose v. Eagle L. and H. Ins. Company*, 6 Cush. 42, 49.

We do, however, consider the denial of certain of the requests of the defendant as prejudicial error.

It is apparent from the language used by the trial judge in his disposition of the request of the defendant numbered 23 that he considered the case of *Sullivan v. John Hancock Mut. L. Ins. Co.*, 342 Mass. 649 (hereinafter called the *Sullivan* case) as controlling in this case.

The cases are similar in many respects but there is at least one important distinction between them. In the *Sullivan* case, the insured signed the application in blank prior to the time the false statements were written in it by the defendant's examining physician. In this case, the plaintiff signed the application after the false statements were written in it by the insurance agent.

In the *Sullivan* case, the insured did not make any false statements. In fact, his statements were truthful but were recorded falsely on the application by the defendant's examining physician. In this case, the plaintiff, by signing the application containing the false statements, endorsed it and in effect represented himself as the author of those statements. The fact that the agent, employed by

the defendant, had recorded his statements falsely and urged him to sign the application in its untruthful form cannot justify the action of the plaintiff in doing so.

In the *Sullivan* decision, the court comments that the principle on which the case was decided (equitable estoppel) gains support from the rule that where one of the two innocent parties must suffer, he, through whose agency the loss occurred, must bear it. This support is entirely lacking here for we do not hold the plaintiff in this case was innocent and if equitable principles are relevant, he certainly did not have "clean hands".

"For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether by issuing a policy, it wishes to insure him." *Stipcich v. Met. L. Ins. Co.,* 277 U.S. 311; *Gobbett v. Conn. Gen. L. Ins. Co.,* 303 Mass. 433.

Nor does there appear support for the plaintiff's position from authorities in the insurance field. "If the insured reads the application and knows that the agent has made false answers to the questions therein, the policy is void." Appleman, Insurance Law and Practice, §9405. " . . . The insured or beneficiary cannot claim the protection of the (majority) rule if the insured was aware that the answers as written by the agent were incorrect but failed to take any step to correct them . . . " Couch, Insured 2d, §35.169.

We have been unable to find a Massachusetts case where the issue in this case was decided. There are, however, a number of cases from other states that are analogous and all without exception hold that an insurance company is not barred from establishing a defense in an action on a policy of insurance when the applicant had knowledge that the agent had written false answers in the application. *Prudential Ins. Co. v. Milanas,* 118 NJ Eq. 343; *Axelroad v. Met. L. Ins. Co.,* 267 N.Y. 437; *Sands v. Bankers F. Ins. Co.,* 168 Va. 645; *Perry v. Continental Ins. Co.,* 178 Wash. 24.

Finally, we would direct attention to paragraphs "A and C" of the application which was attached to and formed a part of the insurance contract. G. L. c. 175, §131.

"A.  The foregoing statements and answers are complete, true and correctly recorded, and with Part B of this application, shall form the basis for and be a part of any contract of insurance.

C.  No agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability. Notice to or knowledge of any agent or medical examiner whenever given is not notice to or knowledge of the company. All statements and answers in this application are true and complete and I assent to this application."

While the *Sullivan* case was silent as to these paragraphs, we consider the terms contained in them explicit and controlling and that to hold otherwise on the facts in this case would be to ignore the contractual rights and obligations of the parties to the contract of insurance.

The defendant has not argued and, therefore, is considered as having waived its claim of being aggrieved by the denial of requests 14, 16 and 27. Requests 15, 17, 18, 19 and 34 we consider as having been denied because of the mistaken belief of the trial judge that the theory of the *Sullivan* case applied in this one. Those that related to the false statements in the application were entirely proper.

Request 34 also should have been allowed. For the defendant to prevail in this case, it must sustain the burden of proof that a misrepresentation was made, with actual intent to deceive, or the matter misrepresented increased the risk of loss. G. L. c. 175, §186. There was evidence of such misrepresentation which would warrant a finding for the defendant.

Request 26 states a valid rule of law and should have been allowed. However, as pointed out earlier, testimony of the plaintiff in connection with the answers is admissible on the issue of the intent of the plaintiff to deceive.

There having been prejudicial error in the denial of the defendant's requests 15, 17, 18,

19, 26 and 34, the finding for the plaintiff is vacated and the case is remanded to the District Court of Southern Essex for a new trial.

Geo. Gregson, of Lynn, for the Plaintiff.

Lawrence McCarthy, of Boston, for the Defendant.