*Northern District*

No. 8169

**ALFRED W. MEUSE**

v.

**JOHN HANCOCK MUTUAL INSURANCE COMPANY**

Argued: Mar. 21, 1974 - Decided: Aug. 12, 1974

*Present:* Bacigalupo, P.J., Flynn, Flaschner, JJ.

Case tried to *Cullen, J.* in the Fourth District Court of Eastern Middlesex, No. 1242 of 1972.

**Flaschner, J.** Action of contract on policy of life insurance by beneficiary against insurer to recover proceeds due upon the death of the named insured in the policy (hereinafter sometimes referred to as "the applicant"). The only issue in the case is the affirmative defense that the applicant made certain misrepresen-

tations in the application for the policy which increased the insurer's risk of loss.

The applicant was Martha Meuse, mother of the beneficiary and 61 years old when the policy issued on July 8, 1970. She died on November 5, 1970. The insurer's writing agent testified that because of the applicant's age she was required to undergo a medical examination. He also testified that he asked the applicant the requisite questions from the application and recorded on the application her answers as given. With respect to question No. 6 in four parts, he did this by placing his "x's" under the "No" column (the alternative on the form being a "Yes" column), so that the applicant was recorded by him as answering as follows: Within the past five years (a) she had no "mental or physical disorder"; (b) she had no "checkup, consultation, illness, injury, surgery"; (c) she had not "been a patient in a hospital, clinic, sanitorium, or other medical facility"; and (d) she had no "electrocardiogram, X-ray, other diagnostic test." Insurer's agent testified that, with the exception of the applicant's signature, all other handwriting on the application was his. The plaintiff identified his mother's signature on the application.

The insurer introduced a hospital record which tended to show that the applicant was a patient from January 10, 1969 to January 21, 1969; that her admission diagnosis was "epi-

lepsy grand mal seizure''; that she underwent blood and urine tests, a lumbar puncture, skull X-rays and electrocardiogram and an electroencephalogram''; that she was discharged with the drug ''dilantin''; and that the discharge diagnosis was ''seizure of an unknown cause.''

The insurer's physician who examined the applicant did not testify, but the report of his examination was referred to by the insurer's Senior Medical Associate Director. He testified that, although the examining physician's report contained references to a history of appendectomy and hysterectomy, there was no history given of epilepsy or convulsive disorders. Additional testimony of this witness tended to show that if the information concerning the patient's medical history involving epilepsy were known, the insurer, in accordance with its underwriting rules, could not have issued the policy. He also testified as to the tendency of epilepsy to shorten life expectancy especially with respect to a person over age 50 who has suffered a sudden onset of seizures.

The insurer filed twenty requests for rulings. As to those denied by the trial justice, the insurer claims to be aggrieved. Accompanying his rulings on the requests, the trial justice found the following facts:

> ''The agent of the defendant filled out the application on isurance for the deceased. The deceased made no false statement or misrepresentation to the agent.

The false answers or misrepresentations were made by the agent of the defendant. Finding for the plaintiff, $1500.00''.

The insurer's affirmative defense is controlled by Mass. G.L. c. 175, § 186. To avoid the policy in this case the court would be required to find (1) that in the negotiation of the policy the applicant made an oral or written misrepresentation, and (2) that the matter misrepresented increased the risk of loss. Both of these determinations are usually questions of fact. *Sullivan* v. *John Hancock Mutual Life Inc. Co.*, 342 Mass. 649, 654; *Davidson* v. *Massachusetts Casualty Ins. Co.*, 325 Mass. 115, 119.

On both of these issues the insurer has the burden of proof, and failure to sustain the burden of proof on either of these issues is fatal to the insurer's case. *Quintiliani* v. *John Hancock Mutual Life Ins. Co.*, 340 Mass. 93, 94; *Smardon* v. *Metropolitan Life Ins. Co.*, 243 Mass. 599, 602; *McDonough* v. *Metropolitan Life Ins. Co.*, 228 Mass. 450, 452; *Collins* v. *Casualty Co. of America*, 224 Mass. 327, 331. In the *Smardon* and *McDonough* cases the jury as the trier of fact was held to be entitled to disbelieve uncontroverted evidence introduced by the insurer to sustain this burden of proof.

A justice as the trier of fact performs the same function as a jury and may believe or disbelieve evidence introduced even though

it is uncontroverted. *Northeastern Malden Barrel Co.* v. *Binder,* 341 Mass. 710, 712; *Godfrey* v. *Caswell,* 321 Mass. 161, 162; *Jefferson* v. *Cox,* 246 Mass. 495, 497.

The findings of the trial justice in the instant case expressly register his disbelief of the uncontroverted testimony by the insurer's agent that he recorded Mrs. Meuse's answers as given. The trial justice's rulings on the insurer's requests are consistent with his special findings.

Certain of the requests would have required the trial justice to rule that as a matter of law misrepresentations were made. Other requests depend on the legal arguments that the trial justice's findings were not supported by the evidence and that the plaintiff had the burden of proof to establish that his mother gave truthful answers. The authorities cited above, that misrepresentation is a question of fact, the burden of proof as to which is on the insurer, dispose of these contentions. If the insurer's evidence on misrepresentation is not believed by the trier of fact, the insurer's affirmative defense fails. Since that is its only defense, the plaintiff then prevails. The trial justice clearly disbelieved that the "x's" recorded on the application by the insurer's agent represented oral answers by the applicant. The trial justice found that they were false, but that they were made by the insurer's agent. If the trial justice did not believe the

insurer's agent that the applicant made the false answers, it necessarily follows that the agent and not the applicant made them.

Still the insurer contends the plaintiff, in order to recover, must sustain a counter burden of proof that the applicant gave the agent truthful answers even if he recorded them incorrectly. The insurer refers to this as the plaintiff's meeting a burden of proof on the issue of estoppel.

In the case of *Sullivan* v. *John Hancock Mutual Life Ins. Co.*, 342 Mass. 649, the facts were that the applicant did supply truthful information but the answers written by the insurer's physician as appearing on the application were false. The insurer's contention in the *Sullivan* case was that the contract of insurance never came into being because the answers on the application were not those of the applicant. The court in sustaining the plaintiff's recovery on the policy distinguished between conditions precedent in insurance policies and representations or warranties in original applications. As to the former the burden of proof is on the plaintiff to establish the satisfaction of the condition as a basis for recovery; as to the latter the insurer is said to be estopped from avoiding "a contract of insurance because of the failure of a company's own insurance agent or examining physician correctly to record the answers given

by an applicant." *Sullivan* v. *John Hancock Mutual Life Ins. Co.*, 342 Mass. 649, 654.

In the instant case no question is raised about the existence of the contract of insurance. It is agreed that the policy issued. As to the burden of proof the *Sullivan* case imposes no new burden on the plaintiff. On the contrary, the court states at p. 655: "A holding that a contract of insurance did exist in the present case based on the application actually signed by the insured does not prejudice the defendant, since it could still demonstrate that the insured did supply the untruthful answers with an actual intent to deceive or that the matters misrepresented increased the risk of loss." In the case of "an applicant who knowingly supplies untruthful answers to questions in an application . . . an insurance company must prove an affirmative defense that the misrepresentations were made with an actual intent to deceive or that the matters misrepresented increased the risk of loss. G.L. c. 175, § 186." (pp. 654-5). Here, the insurer's position is that the misrepresenting applicant described above was Mrs. Meuse. Accordingly, it was up to the insurer to prove it.

The insurer seizes upon the use of the word "estoppel" in the *Sullivan* case and cites authorities which describe this doctrine as one not regarded by the law with favor and which place the burden of proof on the party asserting the estoppel. However, this case does not

involve the traditional procedural rules of pleading and proof associated with the doctrine of estoppel. The insurer would concede it has the burden to prove that the information contained in the application signed by the applicant constitutes a misrepresentation, even if recorded by the agent, but the insurer would contend that the plaintiff would still be left with the burden of proving the applicant was not responsible for the misrepresentation. In this way the plaintiff would be required to assume the burden of proof with respect to the estoppel asserted against the insurer. However, this simply does not accord with the burden of proof as defined so clearly in *Sullivan, Smardon, McDonough* and *Collins,* supra. Nowhere does it appear that there is more than one burden of proof to establish all the facts necessary to persuade the trier of facts that the applicant is guilty of such a misrepresentation as to be material or to defeat or avoid the policy pursuant to the statute. That single burden of proof is on the insurer.

The result is not inequitable to the insurer, especially in the case of an action to recover the proceeds of a life insurance policy. The applicant is usually the only person other than the agent participating in the answering of the questions on the application, but the applicant is dead. As stated in *Sullivan* (p. 655), "where one of two innocent parties must suffer, he through whose agency the loss occurred must

bear it." Moreover, the insurer is not without the ability to guard against its exposure. Among other procedures within its control it may require the applicant to record the answers and even to have them witnessed. Needless to say, the applicant and the beneficiary are at the mercy of any agent who merely obtains a signature and sends the applicant to the insurer's physician for an examination on which the agent vicariously relies, while he takes care of the rest of the paperwork himself.

As the Court concluded in *John Hancock Mutual Life Ins. Co.* v. *Schwarzer*, 354 Mass. 327, 331: "We recognize that the limitation here applied . . . also risks fraudulent imposition by applicants upon insurers. The control, however, of this sort of imposition, either on the applicant or the insurer, lies to a substantial extent within the insurer's power in the modification of procedures for obtaining and submitting applications."

**The report is hereby dismissed.**