# THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
## vs.
## Michael D. SOUZA

### No. 79-3447

Superior Court/Middlesex, ss
Commonwealth of Massachusetts

### March 18, 1983

**Edward F. Cregg,** counsel for plaintiff.
**Thomas Gibson and Carl Tetsko,** counsel for defendant.

## MEMORANDUM OF DECISION
## RE: FINDINGS OF FACTS, RULINGS OF LAW AND ORDER

### I. Introduction

The complaint of Prudential Insurance Company of America (Prudential) seeks to have declared void and to otherwise rescind a total disability insurance policy issued by it on September 12, 1977 to the defendant, Michael D. Souza, because of the falsity of statements pertaining to his health and prior medical history in the application signed by him and dated September 12, 1977.

Specifically, Prudential alleges that in the application for total disability insurance, Souza falsely represented the last date he had consulted a physician or other practitioner (Question 11a in Exhibit #2); the fact that he had not been hospitalized within the past ten years (Question 12a in Exhibit #2); and that he had not been attended, examined or had a checkup by any physician or other practitioner within the past five years (Question 13a in Exhibit #2).

Prudential contends that these misrepresentations were made with the actual intent to deceive Prudential and

that the matters misrepresented increased the risk of loss assumed by Prudential who relied on the information in the application in issuing the policy, thereby voiding the policy as set forth in M.G.L.A. Chap. 175, sec. 186 in that the defendant Souza's answers to Questions 11a, 12a and 13a were false because from February 25, 1973 through March 2, 1973 Souza was confined to the Sancta Maria Hospital in Cambridge under treatment of a physician for a sprain of the lower back and a cerebral concussion as a result of his being injured in a motor vehicle accident while at work and that from June 5, 1975 through June 12, 1975 Souza was again confined to the Sancta Maria Hospital under treatment of a physician for an acute sprain of the cervical and lumbar spine with nerve root damage as a result of being injured in a work related accident. (See Exhibit #6—Records of Souza's admissions to Sancta Maria Hospital).

Defendant Souza contends that he supplied Prudential's agent, Henry Jacintho, a duly authorized representative of the Prudential Insurance Company of America, with truthful information in answers to the questions asked by Jacintho, specifically that he had been hospitalized in 1973 and again in 1975 for injuries to his back; that the answers written by said Jacintho in his own hand as they appear in the application of September 12, 1977 (Exhibit #2) were false; that Souza was not asked to read the application and did not do so prior to affixing his signature to it, that he had no intent to deceive Prudential in applying for total disability insurance, but relied instead on the judgment and particular knowledge of said Jacintho in correctly completing the application and that he is entitled to recover monthly income disability benefits of $300.00 under the said policy as he subsequently became totally disabled on September 12, 1978.

On September 12, 1978, exactly one year to the day of the policy's issuance, defendant Souza was injured at work and was hospitalized at the Sancta Maria Hospital from September 12th through September 18, 1978 for a ruptured lumbar disc. (Exhibit #6.)

On September 28, 1978, Prudential received defendant Souza's claim for total disability benefits under said policy and on December 22, 1978 (Exhibit #3) Prudential notified him that it was rescinding said policy because of his "unadmitted health history" (as further set forth in said Exhibit #3) and that in exchange for said policy it would refund all premiums paid plus interest in the total amount of $269.88.

In a Pre-Trial Memorandum submitted and signed by both trial counsel, the facts and contentions of each party as set forth in the Introduction have been stipulated and agreed to.

## II. Findings of Fact

After a trial on the merits, a careful examination of Exhibits #1 through #9 and a review of the court's transcribed notes of the testimony of Dr. Kittredge Anderson, Joseph Silva, Henry Jacintho, Donald Vogt and Michael D. Souza on March 9 and 11, 1983, I find the following relevant and material facts, not otherwise agreed to as set forth in the Introduction.

1. In June of 1977, Henry Jacintho, a duly authorized insurance agent working strictly on commission for the Prudential Insurance Company of America, solicited through the mail Joseph Silva and Michael D. Souza who had recently been involved in the sale and purchase of 9 Adrian Street, Cambridge, for the purpose of selling them insurance.

2. In the early evening of June 8, 1977 Henry Jacintho met both Joseph Silva and Michael D. Souza in the garage at 9 Adrian Street, Cambridge and at that meeting obtained signed applications from both men for total disability insurance.

3. The meeting of June 8, 1977 lasted approximately 30 minutes during which time various types of insurance were discussed and two applications for total disability insurance were completed by said Jacintho and signed by Joseph Silva and Michael D. Souza accompanied by

two checks representing the first quarterly premiums in the amounts as quoted by said Jacintho.

4. In the case of the defendant Souza, a check dated June 8, 1977 in the amount of $40.72 was written by him (Exhibit #5) his age then being 29 and in the case of Joseph Silva, a check dated June 16, 1977 in the amount of $50.35, his age then being 34, was also written by the defendant Souza (Exhibit #9). Michael D. Souza testified and the court so finds that he owed Joseph Silva, his friend of many years and from whom he had recently purchased the property at 9 Adrian Street, Cambridge, the sum of $50.00 and since he did not have sufficient funds on deposit in his checking account on June 8, 1977 to issue a check to cover the first quarterly premium of $50.35 to accompany Joseph Silva's application for total disability insurance, he issued his check in the amount of $50.35 on June 8, 1977 but dated it June 16, 1977, which check was accepted by Henry Jacintho.

5. Joseph Silva, who also was employed by the City of Cambridge, had a prior back injury and in Souza's presence so advised Henry Jacintho on June 8, 1977 who filled out Silva's application in his own hand without indicating therein Silva's prior medical history of a back injury. Silva testified and the court so finds that he was not asked to read the application and did not do so prior to affixing his signature to it. Subsequently, Silva was informed by Jacintho that he was refused coverage because of the information in the policy application (Exhibit #7).

6. Michael D. Souza advised Henry Jacintho, in Silva's presence, that he had been hospitalized in 1973 and again in 1975 for injuries to his back but that Jacintho who filled out Souza's application in his own hand put down false answers to Questions 11a, 12a and 13a under date of June 8, 1977 (Exhibit #8).

7. Both applications written by Jacintho contained **identical** (emphasis supplied) comments regarding the pre-

employment examinations (See 11a in Question 16 in Exhibits #7 and #8) of Silva and Souza except that Silva had worked for the City of Cambridge 5 years on June 8, 1977 and Souza had worked for the City of Cambridge 12 years on June 8, 1977.

8. Michael D. Souza's application for total disability insurance was signed by him on June 8, 1977 and not on June 15th or June 16, 1977 (Exhibit #8).

9. The meeting of June 8, 1977 among Silva, Souza and Jacintho was friendly and due to the fact that all three men were of Portuguese decent, and element of mutual trust, confidence and reliance existed in Jacintho's statements to Silva and Souza, who at that time was approximately 51 years of age and had been employed as an agent for Prudential for approximately 11 years, especially his reference to leaving the information as written on the application to "the computer" in that if insurance was previously applied for and they have been turned down, the insurance company would have access to this information through MIB computer file.

10. Neither Joseph Silva nor Michael D. Souza read the completed applications before signing them as they were both told by Henry Jacintho that he would take care of everything, that there was no need to worry and that they were both insured for total disability as of June 8, 1982 for the defendant Souza and June 16, 1982 for Joseph Silva (Exhibit #7 is dated June 15, 1977).

11. On July 8, 1977, Prudential issued to the defendant Souza Policy #H 4-197-788 for total monthly disability benefits of $300.00, but due to a subsequent determined change in classification, the previously quoted and remitted premium of $40.72 (Exhibit #5) was increased to $50.92, requiring Souza to pay an additional $10.20. (See Remarks of Henry Jacintho dated September 12, 1977-Exhibit #2).

12. As the policy placing period expired on September 2, 1977 and Jacintho was unable to meet with the defendant Souza

to obtain the additional premium of $10.20 prior to September 2, 1977, Jacintho met the defendant Souza on Adrian Street. Cambridge, in the early evening of September 12, 1977 at which time Souza signed a new application for disability insurance at Jacintho's request (Exhibit #2), which was identical in form to the application signed by him on June 8, containing the same answers as in Section C of Exhibit #8. Specifically the answers to Question 11a that the last date a physician or other practitioner was consulted by the proposed insured was July of 1965 and to Question 12a that within the past 10 years no person proposed for coverage had been hospitalized or had a surgical operation and to Question 13a that within the past 5 years no person proposed for coverage had been attended, examined or had a checkup by any physician or other practitioner, which questions I find were not asked by Jacintho nor answers given by Souza on September 12, 1977, but that only a new application was signed by the defendant Souza which contained the same answers to Questions 11a, 12a, and 13a as in the application dated June 8, 1977 (Exhibit #8) along with a check for the additional premium of .$10.20.

13. I find that the defendant Souza was not asked to read the application for disability insurance on September 12, 1977 nor did he do so prior to affixing his signature to it.

14. Although no check in the sum of $50.92 was introduced into evidence, I find that since defendant Souza's check #23 dated June 8, 1977 (Exhibit #5) in the sum of $40.72 was negotiated by Prudential on June 15, 1977 the additional premium of $10.20 was paid on September 12, 1977 by Souza to Henry Jacintho, as agent of the plaintiff, Prudential.

15. On September 12, 1977, Prudential issued Policy No. H 198-033 (Exhibit #1) to the defendant Souza which policy provided for a monthly income benefit of $300.00 for total disability after a 4 week elimination period for a maximum duration of 24 months or to the 20th anniversary of the policy date if longer. For this coverage the quarterly payment was $50.92.

16. Defendant Souza paid his quarterly payments of $50.92 up until September 12, 1978 when on that date he was injured at work while attempting to life a heavy object resulting in his being hospitalized from September 12th through September 15, 1978 (Exhibit #6) at Sancta Maria Hospital. His injury was diagnosed as a ruptured lumbar disc by Dr. Kittredge Anderson of Boston, a board certified neurologist, who testified that he had first treated the defendant Souza in February of 1973 and again in June of1975 for back injuries incurred in work related accidents and that as a result of Souza's injury on September 12, 1978, he began treating him again on December 5, 1978 and has continually treated him to the present time having last seen him at his office on February 11, 1983.

17. Dr. Anderson testified and I so find, no other medical testimony being offered to the contrary, that as a result of the defendant Souza's injury of September 12, 1978 he has a 50% loss of forward bending and straight leg raising, that he is unable to sit or stand for any appreciable period of time and is unable to do any lifting or engage in any activity requiring strenuous exertion, that he must not put any active or passive stress on his lower back, that driving a motor vehicle either a car or truck, is difficult as is any twisting, bending, pushing or stooping and that he is of the opinion that the defendant Souza is totally disabled and that his chances of improvement are slim absent an operation which in his opinion there is a 50/50 chance that the prescribed surgery would correct his condition, i.e. a ruptured lumbar disc.

18. The defendant Souza has a serious speech impediment which makes communication difficult and which resulted in his being rejected for military service during the Vietnam War. This fact, in and of itself, the court having heard him testify for portions of two days

on the witness stand, casts doubt on the creditability of Jacintho's testimony that he was able to conclude the interview of June 8, 1977 in approximately 30 minutes with both Silva and Souza during which time he testified that he asked each of them approximately 30 questions (Exhibits #7 and #8) in completing their respective applications as well as discussing with them various types of insurance and receiving two checks from Souza as more particularly set forth in Paragraph 3 of the court's Findings of Facts.

19. The defendant Souza was placed on total disability retirement by the City of Cambridge in February of 1980.

20. The defendant Souza is a 1966 graduate of Rindge Technical High School in Cambridge. (The court notes with interest the same reference in Jacintho's remarks in 11a on Exhibits #2 and #8 that the defendant Souza had a pre-employment exam with the City of Cambridge in July of 1965 by a doctor in the State House, which was 11 months prior to his high school graduation). That he has had no other employment other than being a Motor Equipment Operator-Laborer Grade II for the City of Cambridge and has 18 credits as a part-time evening student at University College at Northeastern University, but is not enrolled in a degree program.

21. I find that because of his physical restrictions, as so testified to by Dr. Anderson, his lack of special training and difficulty in being able to communicate his thoughts and ideas to others due to a serious speech impediment. The defendant, Michael D. Souza is at present totally disabled and has been since September 12, 1978 to date.

22. I find that the defendant, Michael D. Souza gave Henry Jacintho, the agent of the plaintiff, Prudential, true information about his prior back injuries, hospitalization and medical treatment in reference thereto, and that he had no intent to deceive Prudential in applying for total disability insurance.

23. Donald Vogt, an underwriting consultant employed for 30 years by the plaintiff, Prudential, testified that he evaluates risks based on information supplied in the application for insurance and decides if a policy should issue and if so, how it should be rated or otherwise limited and that coincidentally he approved the defendant Souza's application for insurance. Upon inquiry by Prudential's counsel, he testified that had the information about the defendant Souza's prior back injuries, hospitalization and medical treatment in reference thereto been included in his application for total disability insurance, the policy would still have issued except that two exclusion waivers would be required to be first signed by the defendant Souza, prior to the issuance of the policy, limiting the policy's coverage or otherwise excluding any claim for total disability based on either a cervical sprain or a ruptured lumbar disc and that the failure of Souza's application to contain the information about his prior back injuries, hospitalization action and medical treatment in reference thereto resulted in an increased risk of loss on Prudential.

24. I find that the false statements in the application of September 12, 1977 (Exhibit #8) materially affected the acceptance of the risk and the hazard assumed by the plaintiff Prudential and that Prudential would not have issued the policy (Exhibit #2) without first obtaining the proper waivers had it been informed of the defendant Souza's prior medical history by truthful answers written by its agent, Henry Jacintho, but since Jacintho was responsible for the false statements which were due to no fault of Souza, Prudential could not rescind or otherwise void the policy dated September 12, 1977.

### III. Rulings of Law

In **John Hancock Mutual Life Insurance Company vs. Schwarzer,** 354 Mass. 327 (1968), it was held that an insurance company was not entitled to have declared void a hospital expense policy issued by it because of the falsity of statements in the application where it

appeared that when the company's agent called upon the applicant, she was not asked to read the application and did not do so, that she gave the agent true information about illnesses and hospitalization and had no intent to deceive, that the agent filled out the application in his own hand and put down false answers as to the applicant's illnesses and hospitalization.

In **Schwarzer,** the trial judge found that the agent of the company was responsible for the false statements and that they were due to no fault of the applicant **Schwarzer,** citing as authority **Sullivan v. John Hancock Mutual Life Insurance Co.,** 342 Mass. 649 (1961) wherein it was held that the insurance company could not avoid the policy where the truthful information was supplied to the insurance company's examining physician who wrote false answers to the medical questions in the application. Such is the ruling of this court in finding in favor of the defendant Souza on his counterclaim.

As stated in **Sullivan, supra,** and applicable here, the mere fact that the application contained false answers to medical questions within the applicant's knowledge does not as a matter of law show any actual intent to deceive on the part of an applicant for insurance within G.L. c. 175, sec. 186.

These two cases are controlling in denying rescission to the plaintiff Prudential Insurance Company of America who has failed to sustain its burden of proof that there was either an actual intent to deceive or an increase in the risk of loss in order for the insurer to avoid the policy since here the falsity of the statements, like in **Schwarzer,** was the responsibility of the Henry Jacintho, the Company's agent.

As stated by Spiegel, J. in **Sullivan** at p. 654, "it would be unfair to permit an insurance company to avoid a contract of insurance because of the failure of a company's own insurance agent or examining physician correctly to record the answers given by an applicant." And as further stated by Spiegel, J.

"In this highly competitive business with the complexity of the varied types of insurance today, it has been recognized that applicants frequently do in fact rely upon a company's representatives. The courts have been unwilling to permit the companies to assert as a defense the inadequate or improper performance of these representatives. The principle of the majority doctrine gains support from the rule that where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it."

Here, Prudential's agent Jacintho, upon whom the defendant Souza relied, wrote in the answers to the questions in the application as the agent of the plaintiff, Prudential, who seeks rescission. **Giannelli v. Metropolitan Life Insurance Co.,** 307 Mass. 18 (1940).

Plaintiff argues that since the statements in the application were admittedly false and concerned facts of which the applicant had personal knowledge, they were misrepresentations made with knowledge of their falsity and therefore no further proof of an actual intent to deceive was required. This argument completely ignores the defendant's contention that he did not make the representations and therefore they were not knowingly false or made with intent to deceive. As stated in **Rappe v. Metropolitan Life Insurance Co.,** 322 Mass. 438, an incorrect statement does not necessarily indicate an actual intent to deceive.

Therefore, based on the foregoing, the court denies the right to the plaintiff to avoid the policy and finds in favor of the defendant on his counterclaim.

## ORDER

Based on the foregoing findings of facts and rulings of law, the court enters the following Order:

1. Policy #H-4 198-033 dated September 12, 1977 issued by Prudential Insurance Company

of America to Michael D. Souza is a valid contract of insurance and is in full force and effect.

2. The plaintiff, Prudential Insurance Company of America is ordered to pay to the defendant, Michael D. Souza total disability monthly benefits in the sum of $300.00 a month from October 12, 1978 to March 12, 1983, a period of 52 months, for a total of $15,600.00 plus interest and costs.

3. The plaintiff, Prudential Insurance Company of America is ordered to pay to the defendant, Michael D. Souza total disability monthly benefits in the sum of $300.00 a month commencing April 12, 1983 and to continue to pay said monthly benefits of $300.00 until such time the defendant, Michael D. Souza is no longer entitled to said monthly total disability benefits under the terms and conditions of Policy #H-4 198-033 dated September 12, 1977.

**Herbert Abrams**
**Justice of the Superior Court**