**HAWAIIAN LIFE INSURANCE COMPANY, LTD.,** Plaintiff–Appellee,

v.

**Norma A. LAYGO; Jaime F. Laygo; Charine A. Laygo; Reynaldo A. Laygo; Melanie A. Laygo; Cheryl A. Laygo, Defendants–Appellants.**

No. 88–2720.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1989.

Decided Sept. 13, 1989.

Daniel R. Del Priore, Agana, Guam, for defendants-appellants.

Colin O. Miwa, Honolulu, Hawaii, for plaintiff-appellee.

Before GOODWIN, Chief Judge, HUG and TANG, Circuit Judges.

TANG, Circuit Judge:

The Laygos appeal two summary judgments granted to Hawaiian Life Insurance Company (Hawaiian Life), the first allowing Hawaiian Life to rescind a policy issued to Norma Laygo because of material mis-

representations on her insurance application and the second dismissing the Laygos' counterclaim against Hawaiian Life.

The district court held that Mrs. Laygo[1] misrepresented her medical history and omitted reference to cobalt treatments for cancer. The district court also held that Hawaiian Life was entitled to rescind the life insurance contract because Laygo's misrepresentations and omissions materially affected Hawaiian Life's decision to issue the policy.

We reverse because there are material issues of fact concerning how the application form was filled out, and whether Laygo and/or the insurance agent did in fact misrepresent material facts. Material issues of fact also exist concerning Laygo's knowledge of her cancerous condition, and concerning her conversation with Dr. Carbonel, Hawaiian Life's examining physician.

FACTUAL BACKGROUND

In July of 1983, Laygo underwent a thyroidectomy in the Philippines. The parties dispute whether Laygo actually understood that she had cancer. Her treating physician, Dr. Olalia, diagnosed Laygo as having undifferentiated carcinoma of the thyroid and directed her to undergo cobalt treatments. Laygo had been given a copy of the pathologist's report which stated that there were giant tumor cells diagnosed as undifferentiated carcinoma, but there is evidence that Laygo never understood the meaning of "undifferentiated carcinoma." She asserts that she was never told that the thyroidectomy was for cancer. The doctor who performed the surgery, however, claims that he had told her.

Laygo subsequently undertook cobalt therapy as directed. On or about January 6, 1984, Laygo applied to Hawaiian Life for life insurance, but there is factual dispute concerning the manner in which the application form was filled out. According to Laygo, Hawaiian Life Insurance agent, Roger Surban convinced her to purchase a Hawaiian Life Insurance policy. He was

1. All further references to Norma Laygo will be to "Laygo."

also a close friend and godfather to her child. He read the application form to her and filled in the responses. Some of their conversation was in Tagalog. Question number 2(j) asked whether the applicant had ever been treated for tumors or cancer. This question was answered in the negative. She told him about the thyroidectomy, and gave him the name of the hospital and the doctor.

According to Laygo, she also told Surban about her cobalt therapy, but he nonetheless answered the question in the negative. Laygo claims even to have asked Surban if he was sure about the propriety of his response, and he said yes. According to Hawaiian Life, Laygo answered question 2(j) herself, thus misrepresenting her previous condition and treatment.

About a week later, on or about January 12, 1984, Hawaiian Life's medical examiner, Dr. Carbonel, examined Laygo and asked further questions about her medical history. Laygo answered no to question 2(j).

Question 6(b) of the application required Laygo to disclose all medical consultations within the last five years, but the facts concerning the answer to this question are in dispute as well. According to Laygo, Dr. Carbonel was in charge of the questioning. There was nothing hidden regarding any treatment she had received. According to Hawaiian Life, Laygo purposefully omitted reference to her cancer therapy.

Hawaiian Life issued a $250,000 insurance policy on Laygo's life on June 5, 1984, some five months later.

### PROCEDURAL BACKGROUND

On June 4, 1986, approximately two years after issuance of the policy, Hawaiian Life filed a complaint, seeking declaratory relief to have Laygo's policy voided. Hawaiian Life canceled the policy and refunded all premiums paid because of Laygo's alleged material misrepresentations concerning her medical condition and history.

Laygo answered and responded with a counterclaim. She claims that she did not misrepresent the facts and that Hawaiian Life is estopped from denying coverage because the company had reviewed Laygo's application prior to its acceptance. In her counterclaim, Laygo asks for a declaration that the policy was valid. She also asks for the sum of $25,000 in compensatory damages and $5,000,000 in punitive damages. She contends that she had disclosed all that was expected and that Hawaiian Life is estopped from bringing this action.

On April 15, 1987, Hawaiian Life moved for summary judgment. The district court granted the motion on September 28, 1987, and ruled that Hawaiian Life prevailed as a matter of law because of Laygo's material misrepresentations as to her medical condition. The court noted that "Guam law does not contain a statute pertaining to insurance policy cancellations," and concluded "[a]bsent a statute to the contrary a misrepresentation by an insured on an application for insurance which materially affects the insurer's acceptance of the risk entitles the insurer to cancel the policy." The court held that innocent material misrepresentations could be grounds for cancellation.

The court found that Laygo had misrepresented her condition by: 1) failing to disclose her cobalt therapy and the diagnoses in the pathology and Dr. Olalia's reports, and 2) denying any indications of cancer or tumor. Laygo's representations were found to be material because Hawaiian Life specifically asked for identification of all attending physicians and medical consultations.

On December 10, 1987, Hawaiian Life moved for summary judgment to dismiss Laygo's counterclaim. The insurance company's second motion was granted on April 14, 1988 on the ground that the same issues were involved as in the earlier summary judgment. The district court entered final judgment in favor of Hawaiian Life on all counts in all claims on April 19, 1988.

### STANDARD OF REVIEW

A summary judgment is reviewed de novo. *Bonner v. Lewis,* 857 F.2d 559, 561 (9th Cir.1988). In reviewing the grant of

summary judgment, we view the evidence in the light most favorable to the nonmoving party and determine whether any genuine issues of material fact exist and whether the relevant substantive law was correctly applied. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). A district court's interpretation of Guam law is reviewed de novo. *Guam v. Yang*, 850 F.2d 507, 509 (9th Cir.1988) (en banc).

### DISCUSSION

The district court stated that no Guam statutes applied to the cancellation of insurance policies. It concluded also that no statutes forbade reliance upon the common law to allow rescission of insurance policies if innocent material misrepresentations had been made.

The district court's reasoning on the misrepresentation issue follows:

> Absent a statute to the contrary a misrepresentation by an insured on an application for insurance which materially affects the insurer's acceptance of the risk entitles the insurer to cancel the policy.[2] Couch on Insurance 2d, § 67:346; *Life Insurance Co. of North American [America] v. Capps*, 660 F.2d 392 (9th Cir.1981); *Jeffress v. New York Life Ins. Co.*, 74 F.2d 874 (4th Cir.1935).

> A life insurance policy may be canceled for false representations by the insured as to material matters even though such representations were made innocently or as the result of mistake. Couch, *supra*, § 67:347; *Dinkins v. American Nat. Ins. Co.*, 92 Cal.App.3d 222, 154 Cal.Rptr. 775 (1979).

> Equity will cancel a policy based upon false representations by the insured as to his previous health even though such representations were innocently made. Couch, *supra*, § 67:348; *Travelers' Ins. Co. v. Evslin*, [101 N.J.Eq. 527], 139 A. 520 (NJ 1927); *Cohen v. Pennsylvania Mutual Life Insurance Co.*, 48 Cal.2d 720, 312 P.2d 241 (1957). In an equitable action to cancel a life insurance policy the applicant's knowledge of the falsity

of his representations is immaterial. Couch, *supra*, § 67:343.

Although we do not necessarily disagree with the rules and authorities relied upon by the district court, we disagree with the application of those rules to the facts in this case. In order to determine whether equitable relief by way of rescission should be granted it is necessary to look at all the facts. *Heake v. Atlantic Cas. Ins. Co.*, 15 N.J. 475, 105 A.2d 526 (1954) (citation omitted). The district court failed to analyze the insurance agent's role in this dispute.

Even if innocent misrepresentation gives rise to the right to rescind (a question we do not address), such a rule does not cover the facts as alleged in this case. Here, viewing the facts, as we must, in a light most favorable to Laygo, it is the agent and not the insured who made the misrepresentations. Surban's acts and intentions are therefore determinative to the outcome of this dispute.

■ Surban's knowledge of the actual facts of Laygo's medical history is chargeable to Hawaiian Life. It cannot, therefore, avoid liability under the policy because of the misstatements and omissions from the application. Hawaiian Life is not entitled to rely upon the application alone and disregard any oral expressions made by the Laygos. We impute to the insurance company the agent's actions in entering answers on the application form which were not in accordance with information furnished orally by the Laygos.

Because all of the facts must be examined to determine whether rescission should be granted on Laygo's policy, we reverse the district court's orders granting summary judgment. Laygo is entitled to an opportunity to explain her actions, the reasons for them and what the insurer's agent Surban did. The relationship between Laygo and Surban should be developed on the record. In short, Laygo should be allowed to present further evidence why Hawaiian Life should be equitably estopped from rescinding the policy.

---

**2.** Guam law does not contain a statute pertaining to insurance policy cancellations.

We agree with the reasoning in *Sullivan v. John Hancock Mut. Life Ins. Co.*, 342 Mass. 649, 174 N.E.2d 771 (1961):

> It would be unfair to permit an insurance company to avoid a contract of insurance because of the failure of a company's own insurance agent or examining physician correctly to record the answers given by an applicant. In this highly competitive business . . . with the complexity of the varied types of insurance existing today, it has been recognized that applicants frequently do in fact rely upon a company's representatives.

*Id.* 174 N.E.2d at 774.

When an applicant gives correct oral answers which are incorrectly recorded by an authorized agent, the insurer cannot rely upon the falsity of the answers to avoid the policy. *Oberg v. John Hancock Mut. Life Ins. Co.*, 114 Ill.App.2d 152, 251 N.E.2d 918, 923 (1969). *See generally* Annotation, 33 A.L.R.2d 615 (1954); 17 J. Appleman, Insurance Law and Practice §§ 9401, 9402, 9409–9412, 9416 (1981).

We hold that it is a material issue of fact for the jury to determine whether truthful answers were given by the insured and properly recorded by an agent of the defendant. If Laygo conspired with Surban to defraud Hawaiian Life, then of course she cannot recover. But if she told Surban the truth and he misrepresented or withheld the truth to profit from a sales commission, the fault lies with Surban and Hawaiian Life, not with Laygo.

We also hold that there is a triable issue of material fact as to what conversation took place between Laygo and Hawaiian Life's doctor. If the doctor employed by Hawaiian Life did not feel that Laygo's thyroidectomy presented a health issue that merited further follow-up before a policy was issued, then the insurance company should bear the responsibility for its failure to investigate. *Id.* at §§ 9484, 9485.

Our decision is in accordance with the common law:

> [W]here an agent propounds a prescribed categorical list of questions and leaves out such answers as would work a refusal of the policy, and the insurer issues a policy, it, and not the insured, is responsible for the situation so arising.

17 J. Appleman, Insurance Law and Practice, § 9402 (1981).

We REVERSE and REMAND for proceedings consistent with this opinion.