**REASSURE AMERICA LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Douglas M. ROGERS, Defendant.**

**No. CIV. 02–00235DAEKSC.**

United States District Court,
D. Hawai'i.

March 5, 2003.

John R. Lacy, Randy L.M. Baldemor, Goodsill Anderson Quinn & Stifel LLLP, Honolulu, HI, for plaintiff.

David R. Harada–Stone, Jerry M. Hiatt, Kamuela, HI, for defendant.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the motions on February 24, 2003. John R. Lacy, Esq., and Randolf L.M. Baldemor, Esq., appeared at the hearing on behalf of Plaintiff; Jerry M. Hiatt, Esq., and David R. Harada–Stone, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motions and the supporting and opposing memoranda, the court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment, and DENIES Defendant's Cross–Motion for Partial Summary Judgment.

## BACKGROUND

In 1990, Defendant Douglas M. Rogers, M.D. ("Dr.Rogers") received an uvalopalatopharyngoplasty ("UPP") from Dr. Ronald P. Peroff ("Dr.Peroff"). Dr. Rogers contends that the UPP was treatment for his snoring.

In May 1994, Dr. Rogers applied for a disability insurance policy with Royal Maccabees Insurance Company, now known as Reassure America Life Insurance Company ("Plaintiff"). Dr. Rogers was already insured under a policy with the Paul Revere Life Insurance Company, which provided for monthly payments of $7,250.00 in the event of a disability. However, Dr. Rogers was interested in Plaintiff's "return of premium rider" benefit. With the return of premium rider, Dr. Rogers paid an additional premium of approximately $5,000.00 per year, but was guaranteed a return of 80% of his premiums back after 10 years if he did not file a claim within that time. If he did file a claim and received disability benefits, the amount of those benefits would be deducted from the returned premium.

In applying for the policy, Dr. Rogers disclosed that his father had died of prostate cancer at age 62 and that he himself had been treated for prostatitis. Dr. Rogers also disclosed that he had undergone knee surgery, that his weight was approximately 240 pounds, and that he smoked three to ten cigarettes a day.

Plaintiff arranged for Dr. Rogers to undergo a physical. On June 21, 1994, Dr. Lambert Lee Loy ("Dr. Lee Loy") took a medical history from Dr. Rogers and helped Dr. Rogers complete the application for insurance. Dr. Rogers claims he orally disclosed to Dr. Lee Loy that he had undergone UPP surgery in the past four or five years. According to Dr. Rogers, Dr. Lee Loy asked Dr. Rogers if the UPP surgery was for snoring, to which Dr. Rogers answered affirmatively. In Parts II and III of his Application, Dr. Rogers in writing disclosed treatment for prostatitis, his father's death at age 62 from prostate cancer, his knee surgery, and his use of Zantac for treatment of reflux esophagitis.

Dr. Rogers signed the application. Part I of the application contained the following provision immediately above Dr. Rogers' signature:

It is understood and agreed that:

(1) the answers recorded in Part I above and Part II, bearing the same number, and any Part III required are, to the best of my knowledge and belief, true and complete and correctly recorded and will become part of this application and any contract for insurance issued upon it;

(2) Except as provided for in the attached Receipt(s), no insurance shall take effect until the policy is accepted by the Owner and the first premium is paid to the Company and the health, habits and occupation of all proposed insureds remain as stated in the application;

(3) Acceptance of any policy issued shall constitute a ratification of any change, correction or addition made by the Company, except in states where required; any change in amount, plan of insurance, classification, age at issue or benefits shall require the signature of the Owner;

(4) That no Agent has the authority to waive the answer to any question, to pass on insurability, to waive any of the Company's rights or requirements or to make or alter any contract.

The following provision appears immediately above Dr. Rogers' signature on Part III of the application:

I hereby declare that all the statements and answers to the above questions are complete and true to the best of my knowledge and belief, and I agree that the foregoing together with this declara-

tion shall form a part, designated as Part III of the application for insurance. . . .

In July 1994, Dr. Rogers again experienced sleep problems, and underwent a sleep study at Orchid Isle Respiratory Services. Dr. John Dawson ("Dr.Dawson") took a medical history from Dr. Rogers and conducted a physical examination. Dr. Rogers spent the night in the clinic. Dr. Dawson, who was not present when Dr. Rogers awoke, signed a report indicating that Dr. Rogers' "symptoms of snoring, excessive daytime sleepiness and observed apneas" . . . "[a]ll improved after the UPPP two years ago, but has again recurred and are more severe recently." Dr. Dawson concluded that the "sleep study confirms the presence of severe obstructive sleep apnea in a patient who has already had a UPPP."

On November 1, 1994, Dr. Rogers signed an "Amendment to Application," which stated:

"I HAVE REREAD MY APPLICATION FOR INSURANCE, AND AFFIRM THAT MY HEALTH, HABITS, OCCUPATION AND EMPLOYMENT REMAIN AS STATED IN THE APPLICATION, AND THE EXAMINATION (IF ANY) FOR THIS INSURANCE."

"I AFFIRM THAT I HAVE NOT CONSULTED ANY PHYSICIAN OR MEDICAL FACILITY FOR ANY REASON SINCE THE APPLICATION AND EXAMINATION (IF ANY) WERE COMPLETED, EXCEPT AS REQUIRED BY ROYAL MACCABEES."

"I ALSO AFFIRM THAT MY INSURANCE NOW IN FORCE OR APPLIED FOR OR APPLYING TO REINSTATE REMAINS AS STATED ON THIS APPLICATION."

\*　　\*　　\*　　\*　　\*　　\*

I hereby agree that these changes shall be an amendment to and form a part of the original application and of the policy issued thereunder, if any, and that they shall be binding on me or any person who shall have or claim any interest under such policy.

Dr. Rogers claims that he had not previously been given a copy of the policy application, and therefore did not have a copy of the application in front of him when he signed the Amendment to Application.

When the policy was issued to Dr. Rogers, it contained the following "IMPORTANT NOTICE":

Please read the copy of the application attached to this policy. Carefully check the application and write to Royal Maccabees Life Insurance Company . . . within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is part of the policy, and the policy was issued on the basis that the answers to all questions and the information shown are correct and complete.

The final version of the Policy provided, under the heading "EXCLUSION":

Pre–Existing Condition Limitation. We will not pay benefits for a Disability which is caused by a Pre–Existing Condition. Pre–Existing Condition means a physical or mental condition:

1) Which was materially misrepresented or not disclosed in Your application; and

2) For which You received a Physician's advice or treatment before the Policy Effective Date; or

3) Which caused symptoms before the Policy Effective Date for which an ordinarily prudent person would seek medical attention.

Nor will We pay benefits for any loss We have excluded by name or specific description.

The Policy also contained the following exclusion:

IT IS UNDERSTOOD AND AGREED THAT THE INSURED BY ACCEPTANCE OF THIS POLICY AGREES THERE SHALL BE NO COVERAGE FOR ANY LOSS SUSTAINED BY DOUGLAS M ROGERS ARISING FROM ANY DISEASE OR DISORDER OF THE PROSTATE, SEMINAL VESICLES, URINARY BLADDER OR URETHRA, INCLUDING ANY TREATMENT OR OPERATION FOR OR COMPLICATIONS THEREOF.

The Policy contained the following time limit after which Plaintiff could no longer assert certain defenses:

TIME LIMIT ON CERTAIN DEFENSES. We rely on the statements made in Your application. But after two years from the Policy Effective Date, no misstatements, except fraudulent misstatements, in the application may be used by Us to void the Policy or deny any claim for loss incurred or Disability that begins after the end of the two year period.

We can also deny a claim on the basis that a Disability or loss is caused by a Pre–Existing Condition. See the PRE–EXISTING CONDITION LIMITATION provision. But We cannot reduce or deny any claim on that basis if:

1) The Disability or loss begins more than two years after the Policy Effective Date; and

2) We have not excluded the loss by name or specific description.

Dr. Rogers made all premium payments due under the policy.

In July 2000, Dr. Rogers suffered the first of a series of strokes. In December 2000, Dr. Rogers suffered a massive stroke that left him permanently and totally disabled. Dr. Anthony Mauro evaluated Dr. Rogers on December 13, 2000, and stated:

Recurrent episodes of neurological dysfunction with blackout, incontinence, clumsiness, in conjunction with hospital documentation of respiratory failure despite BiPAP (oxygen saturation down to the 70s), with the suspected increase in facial/throat soft tissue mass with weight gain, and the reports of hypersomnolence indicate progressive obstructive sleep apnea. In my mind, hypoventilation is the overwhelmingly likely explanation for the neurological syndrome.

\* \* \* \* \* \*

Given the current history of episodes of neurological dysfunction and Dr. Rogers' report that he feels clumsy, I concur that immediate total disability from his work as an emergency room physician, hospital administrator, is appropriate.

Dr. Stephen H. Denzer ("Dr.Denzer"), Dr. Rogers' treating internist, however, stated that the strokes were completely unforeseeable.

Dr. Rogers filed a claim against his policy. On April 17, 2001, Thomas Niemeyer ("Niemeyer"), Reassure America's Assistant Vice–President for Claims, requested from Dr. Rogers' counsel additional information to complete Plaintiff's evaluation, including Dr. Rogers' history of sleep apnea. Plaintiff agreed to begin paying Dr. Rogers' benefits under a reservation of rights.

Roger Donaldson ("Donaldson"), Plaintiff's claims analyst, learned of Dr. Rogers' 1990 UPP surgery and 1994 sleep study. On March 1, 2002, Melinda Yee ("Yee"), Assistant Vice–President of Underwriting at Reassure America, informed Donaldson that a policy would not have been issued to Dr. Rogers if his sleep apnea had been disclosed when he applied for coverage. John McLeod ("McLeod"), a Reassure America underwriter involved in underwriting Dr. Rogers' policy, also stated that

the disability policy would not have been issued if Dr. Rogers' history of sleep apnea had been disclosed.

On April 23, 2002, Plaintiff commenced its action for declaratory judgment, and amended its complaint on July 5, 2002. Plaintiff asserts that it "has been damaged by the fraudulent misstatements made by Defendant in the Application and the Amendment." First Amended Complaint, filed July 5, 2002, at ¶ 30. Plaintiff "seeks a declaration that Defendant is not entitled to benefits under the Policy" as well as "[a]n award in restitution for the amount of benefits paid to Plaintiff under the Policy." *Id.* at 33, p. 7.

On July 23, 2002, Dr. Rogers filed a Counterclaim against Plaintiff, asserting the following causes of action (1) Breach of the Covenant of Good Faith and Fair Dealing; (2) Unfair and Deceptive Trade Practices within the meaning of Hawaii Revised Statutes ("HRS") Chapter 480; (3) Declaratory Relief, binding Plaintiff to continue payment of disability benefits under the Policy for the remainder of Dr. Rogers' lifetime.

On August 12, 2002, Plaintiff filed a Motion to Dismiss All Counts of Defendant's Counterclaim. On October 10, 2002, Dr. Rogers filed a Motion for Partial Summary Judgment as to Plaintiff's Claim for Declaratory Relief. On October 28, 2002, the court granted in part and denied in part Plaintiff's Motion to Dismiss. Specifically, the court denied Plaintiff's Motion to Dismiss Dr. Rogers' counterclaims of bad faith and declaratory relief; but granted Plaintiff's Motion to Dismiss Defendant's Counterclaim of HRS chapter 480 violations. Additionally, the court denied Dr. Rogers' Motion for Partial Summary Judgment, holding that triable issues of fact exist as to whether Dr. Rogers made knowingly false representations to Plaintiff and that the terms of the policy did not bar Plaintiff from asserting any defenses

to payments. Thus, the following causes of action remain in this case: (1) Plaintiff's claim for declaratory relief stemming from Dr. Rogers' allegedly fraudulent statements; (2) Dr. Rogers' counterclaim for Plaintiff's alleged breach of the covenant of good faith and fair dealing; and (3) Dr. Rogers' counterclaim for declaratory relief for continued payment of disability payments under the Policy for the remainder of his lifetime.

On November 21, 2002, Plaintiff filed a Motion for Summary Judgment ("Motion"). Dr. Rogers opposed the Motion on February 6, 2003 and filed a Cross-motion for Partial Summary Judgment as to Plaintiff's Claim for Declaratory Judgment ("Cross–Motion"). Plaintiff replied on February 13, 2003 ("Reply"), and Dr. Rogers filed his own reply on February 19, 2003.

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P.

56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). The Federal Rules of Civil Procedure require "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. However, conclusory arguments unsupported by factual statements or evidence do not satisfy the nonmoving party's burden of producing some "significant probative evidence" tending to refute the moving party's evidence. *In re Lewis,* 97 F.3d 1182, 1187 (9th Cir.1996).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

Plaintiff moves for summary judgment on: (1) its claim for declaratory relief based upon fraud; (2) Dr. Rogers' counterclaim for bad faith; (3) Dr. Rogers' counterclaim for declaratory relief for future benefits; and (4) Dr. Rogers' counterclaim for punitive damages. Dr. Rogers moves for partial summary judgment on Plaintiff's claim for declaratory relief based upon fraud.

## I. *PLAINTIFF'S DECLARATORY RELIEF CLAIM*

■ Dr. Rogers' insurance policy provides that Plaintiff may only deny Dr. Rogers' claim based upon a misstatement in the application if it can prove that the misstatement was a "fraudulent misstatement." In Hawaii, a party claiming fraud must establish, by clear and convincing evidence, that "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci America, Inc.,* 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (Haw.2000). Both Plaintiff and Dr. Rogers move for summary judgment on this issue.

### A. *False Representations*

#### 1. *Oral Statements*

Plaintiff argues that Dr. Rogers made fraudulent misstatements since he failed to

disclose his 1990 UPP surgery and his July 1994 sleep study on his application. Cross–Motion at 27. Dr. Rogers argues, however, that he did, in fact, disclose the 1990 surgery to Dr. Lee Loy and that he did not have knowledge of Dr. Dawson's diagnosis of sleep apnea "at any time prior to the issuance of the Policy on November 1, 1994." *Id.* Moreover, Dr. Rogers contends that, "[a]s far as [he] was concerned, the treatment was for snoring, which had become an impediment to his social life." *Id.* at 6.

Plaintiff argues, however, that Dr. Rogers cannot attempt to introduce oral statements about his alleged disclosure of his 1990 surgery. Motion at 1. For the reasons set forth below, the court agrees, and holds that Dr. Rogers may not introduce his alleged oral disclosures to create a genuine issue of material fact that he made misrepresentations to Plaintiff.

### a. *HRS 431:10–220(a) and the Parol Evidence Rule*

■ Plaintiff argues that Hawaii law requires all terms of an insurance contract to be in writing, and that "the parol evidence rule bars 'testimony of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument.'" Motion at 12–13 (citing Haw.Rev. Stat. § 430:10–220(a), *State Farm Fire & Casualty Co. v. Pacific Rent–All, Inc.*, 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999)). Plaintiff also notes that HRS expressly provides: "(a) No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy." Haw.Rev. Stat. § 431:10–220(a).

Plaintiff argues that Dr. Rogers "is merely offering parol evidence to **modify** the terms of the insurance contract in contradiction of H.R.S. § 431:10–220(a)." Reply at 4 (emphasis in Reply). The court, however, finds that Dr. Rogers is not at-

tempting to modify the *terms* of the contract, but is instead seeking the benefits of the contract for which he bargained and paid. Accordingly, the court finds that HRS § 431:10–220(a) and the parol evidence rule is inapposite to its determination of whether Dr. Rogers' oral statements are competent evidence of what he disclosed to Plaintiff.

### b. *Imputation of Knowledge*

■ Plaintiff also argues that Hawaii does not automatically impute an agent's knowledge to the principal. *See* Motion at 13 (citing *Imperial Finance Corp. v. Finance Factors*, 53 Haw. 203, 206, 490 P.2d 662, 664 (Haw.1971)). The Hawaii Supreme Court explained that the general rule, which imputes an agent's knowledge to the principal, "does not apply when the third party knwos [sic] there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealings." *Imperial Finance*, 53 Haw. at 206, 490 P.2d at 664. Plaintiff argues that Dr. Rogers knew that Dr. Lee Loy would not advise Plaintiff of any oral disclosure regarding his 1990 surgery, since Part I of the application stated that, "It is understood and agreed that:

(1) the answers recorded in Part I above and Part II, bearing the same number, and any Part III required are, to the best of my knowledge and belief, *true and complete and correctly recorded and will become part of this application and any contract for insurance issued upon it;*

(2) Except as provided for in the attached Receipt(s), no insurance shall take effect until the policy is accepted by the Owner and the first premium is paid to the Company *and the health, habits*

*and occupation of all proposed insureds remain as stated in the application;*

\* \* \* \* \* \*

(4) *That no Agent has the authority to waive the answer to any question, to pass on insurability, to waive any of the Company's rights or requirements or to make or alter any contract."*

Dr. Rogers' signature appears immediately below this provision.

Similarly, immediately above Dr. Roger's signature in Part III of the application, he declared "that all the statements and answers to the above questions are *complete and true* to the best of my knowledge and belief, and I agree that the foregoing together with this declaration shall form a part, designated as Part III of the application for insurance...."

Moreover, after Plaintiff issued the policy, an "IMPORTANT NOTICE" stated, "This application is part of the policy, and *the policy was issued on the basis that the answers to all questions and the information shown are correct and complete."*

These conditions appeared immediately above Dr. Rogers' signature on the respective parts of the application, which Dr. Lee Loy helped Dr. Rogers complete. Thus, the general rule which would impute Dr. Lee Loy's knowledge to Plaintiff does not automatically apply here. Dr. Rogers, by signing the application immediately below these provisions, was acquainted with circumstances plainly indicating that Dr. Lee Loy might not advise Plaintiff of any of Dr. Rogers' alleged oral disclosures. Moreover, by signing the application, Dr. Rogers effectively declared that Dr. Lee Loy did not have "the authority to waive the answer to any question." Thus, even if Dr. Rogers did, in fact, orally disclose his 1990 surgery to Dr. Lee Loy, he cannot now introduce his alleged oral disclosure to create a genuine issue of material fact as to the issue of whether he made misrepresentations to Plaintiff.

Dr. Rogers argues that Plaintiff may not ignore the oral statements he made to Dr. Lee Loy. Dr. Rogers relies on *Hawaiian Life Ins. Co., Ltd. v. Laygo,* 884 F.2d 1300 (9th Cir.1989), in which the Ninth Circuit examined whether information furnished orally by an applicant for insurance could be imputed to the insurer. The court applied Guam law, and held, "When an applicant gives correct oral answers which are incorrectly recorded by an authorized agent, the insurer cannot rely upon the falsity of the answers to avoid the policy." *Id.* at 1304. The court imputed "to the insurance company the agent's actions in entering answers on the application form which were not in accordance with information furnished orally by the [applicants]." *Id.* at 1303.

The court will not impute Dr. Rogers' oral statements to Plaintiff based upon the Ninth Circuit's reasoning in Laygo. Although it may be valid law, *Laygo* does not address the facts integral to the issues at hand in the instant case. Specifically, the Ninth Circuit did not discuss whether the insurance applicant in *Laygo* was confronted with clauses that declared that her statements and answers were "complete and true" and that she understood and agreed that "no Agent has the authority to waive the answer to any question, to pass on insurability, to waive any of the Company's rights or requirements or to make or alter any contract." Accordingly, the court will only examine the face of the application to determine whether Dr. Rogers made false representations to Plaintiff.

### 2. *Misrepresentations*

 "The materiality and truth of the statements in the application is usually a question for the jury to determine ...." *Dye v. U.S. Fidelity & Guaranty Co.,* 31 Haw. 699 (1930). It is clear from the face of the application that Dr. Rogers did not

disclose any information regarding his 1990 surgery, or his 1994 sleep study. Such information should have been disclosed in response to various questions on the application, including, "Has any person proposed for coverage within the past five years ... (b) been under observation or treatment in a hospital, sanitarium or institution?" and "Has any person proposed for coverage had or been treated for: (a) any disease or disorder of the eyes, ears, nose, throat, or thyroid gland ...." Although juries typically determine the truth of statements made in applications, the court concludes, as a matter of law, that no rational trier of fact can find, from the face of the application, that Dr. Rogers did not make misrepresentations to Plaintiff. Accordingly, the court finds that Dr. Rogers' answers of "no" to these questions constitute misrepresentations. Thus, Plaintiff has proven by clear and convincing evidence that Dr. Rogers made false representations. Accordingly, Plaintiff establishes the first element of fraud.

### B. With Knowledge of Their Falsity (or Without Knowledge of their Truth or Falsity)

To satisfy the second element of fraud, Plaintiff must establish by clear and convincing evidence that Dr. Rogers made the misrepresentations "with knowledge of their falsity (or without knowledge of their truth or falsity) ...." Shoppe, 94 Hawai'i at 386, 14 P.3d at 1067.

In 1994, Dr. Rogers failed to disclose the 1990 UPP surgery on the application itself, in which he acknowledged that the answers were true and complete. He could have, but failed to, disclose the 1990 UPP surgery and 1994 sleep study on the Amendment to Application, which he signed on November 1, 1994. He also could have, but failed to, disclose the 1990 surgery and 1994 sleep study within 10 days of final issuance of the policy on November 1, 1994.

The misrepresentations at issue here are actually Dr. Rogers' omissions of his 1990 UPP surgery and his 1994 sleep study from his application. Dr. Rogers admits that he was aware of the 1990 UPP surgery. Thus, his signature on the application and Amendment to Application, neither of which referenced the 1990 UPP surgery, constitutes clear and convincing evidence that Dr. Rogers made the misrepresentation with knowledge of its falsity.

In regards to the 1994 sleep study, Dr. Rogers claims, "At the time I signed the 'amendment,' I frankly did not recall whether the sleep study had been done before the June 1994 examination, or vice versa, and whether I had told Dr. Lee Loy about the sleep study as well as the 1990 UPP surgery." See Declaration of Dr. Douglas M. Rogers, dated Oct. 10, 2002, attached to Defendant's Separate and Concise Statement of Facts in Support of Motion for Partial Summary Judgment filed Oct. 10, 2002, at ¶ 14. Thus, Dr. Rogers' did not know whether he had "consulted any physician or medical facility for any reason since the application." Accordingly, his signature on the Amendment to Application representing that he did not consult a physician since the application, when in fact, he underwent the sleep study shortly thereafter, constitutes clear and convincing evidence that he made a misrepresentation without knowledge of the truth or falsity of the statement. Accordingly, Plaintiff establishes the second element of fraud.

### C. Contemplation of Reliance

■ Plaintiff must also establish that Dr. Rogers made the misrepresentations "in contemplation of plaintiff's reliance upon these false representations ...." Shoppe, 94 Hawai'i at 386, 14 P.3d at 1067. Plaintiff argues that the following provi-

sions in the application and policy prove that Dr. Rogers contemplated Plaintiff's reliance upon his misrepresentations:

1. Dr. Rogers signed immediately below the following clause in Part I of the application: "It is understood and agreed that (1) the answers recorded in Part I above and Part II, bearing the same number, and any Part III required are, to the best of my knowledge and belief, true and complete and correctly recorded and will become part of this application and any contract for insurance issued upon it . . . ."

2. Dr. Rogers signed the Amendment to Application, which states, "I have reread my application for insurance, and affirm that my health, habits, occupation and employment remain as stated in the application, and the examination (if any) for this insurance. . . . I hereby agree that these changes shall be in an amendment to and form a part of the original application and of the policy issued thereunder, if any, and that they shall be binding on me or any person who shall have or claim any interest under such policy."

3. The policy contained an "IMPORTANT NOTICE" that instructed Dr. Rogers to "[c]arefully check the application and write to [Plaintiff] . . . within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application." The IMPORTANT NOTICE specifically stated that the "application is part of the policy, and the policy was issued on the basis that the answers to all questions and the information shown are correct and complete."

Dr. Rogers does not specifically dispute that he "contemplated" Plaintiff's reliance upon the misrepresentations made in the application. He does, however, allege that he informed Dr. Lee Loy about his 1990 UPP surgery and that Dr. Lee Loy told him that the procedure was too remote or inconsequential to put on his insurance form. Although the court will not consider these oral statements in determining whether Dr. Rogers made false statements in his application, the court does find these oral statements to be probative in determining whether Dr. Rogers contemplated Plaintiff's reliance on his misrepresentations. A reasonable factfinder may conclude that Dr. Rogers did not think his 1990 surgery or his 1994 sleep study was a material disclosure that he needed to include in his application and that he therefore did not contemplate Plaintiff's reliance on his misrepresentations. Moreover, Dr. Rogers did disclose on his application his history of smoking, treatment for prostatitis, and his arthroscopic knee surgery, all of which may lead a trier of fact to conclude that Dr. Rogers did not contemplate that Plaintiff would rely upon an omission about what he believed to be treatments for snoring.

Thus, drawing all justifiable inferences in Dr. Rogers' favor, the court finds that genuine issues of material fact exist as to whether Dr. Rogers contemplated Plaintiff's reliance upon his misrepresentations. Accordingly, the court DENIES Plaintiff's Motion for Summary Judgment.

### D. *Reliance*

The fourth and final element of fraud requires Plaintiff to prove by clear and convincing evidence that it did, in fact, rely upon Dr. Rogers' misrepresentations. *Shoppe*, 94 Hawai'i at 386, 14 P.3d at 1067. Since the court denies Plaintiff's Motion on the basis that Plaintiff cannot, as a matter of law, establish that Dr. Rogers contemplated that Plaintiff would rely upon his misrepresentations, the court need not ad-

dress this final element of fraud in this Order.

### E. Conclusion on Plaintiff's Motion for Summary Judgment on the Issue of Fraud

For the foregoing reasons, the court finds that Plaintiff is unable to establish, as a matter of law, that the misrepresentations made by Dr. Rogers were "fraudulent," as defined in Hawaii. Genuine issues of material fact exist as to whether Dr. Rogers contemplated Plaintiff's reliance on his misrepresentations regarding his 1990 UPP surgery and 1994 sleep study. Accordingly, the court DENIES Plaintiff's motion for summary judgment on its declaratory relief claims.

### F. Conclusion on Defendant's Cross–Motion for Partial Summary Judgment on the Issue of Fraud

The court DENIES Dr. Rogers' Cross–Motion for Partial Summary Judgment on the issue of whether he made fraudulent misstatements to Plaintiff in his application. First, the court denied Dr. Rogers' Motion for Partial Summary Judgment on this exact issue on October 28, 2002, holding that "Plaintiff presents sufficient evidence such that a reasonable fact finder could decide the issue of fraud in Plaintiff's favor." Dr. Rogers argues that his Cross–Motion "renews his request for partial summary judgment," on Plaintiff's declaratory relief claim. See Cross–Motion at 1–2. Dr. Rogers, however, provides no explanation why the court should alter its determination that genuine issues of material fact exist as to whether Dr. Rogers made fraudulent misstatements to Plaintiff. In its October 28, 2002 Order, the court was presented with, and considered, most of the evidence and arguments Dr. Rogers presents in his instant Cross–Motion. Moreover, Dr. Rogers gives the court no reason why the scant "new" evidence he presents in his Cross–Motion,

such as the deposition testimony of William L. Coats, a subagent of Plaintiff, should compel the court to reverse its October 28, 2002 Order.

■ Additionally, the court finds that Dr. Rogers' Cross–Motion was untimely filed. As Dr. Rogers concedes, the Rule 16 Scheduling Conference required that dispositive motions be filed by November 20, 2002. Dr. Rogers did not file his Cross–Motion until February 6, 2003, nearly two and one-half months after the court-ordered deadline.

Dr. Rogers does not dispute that his Cross–Motion is a dispositive motion, but argues that, pursuant to Rule 54(b), the court's October 28, 2002 Order is subject to revision. See Cross–Motion at 9. The court, however, observes that Dr. Rogers did not file a motion for reconsideration of the court's October 28, 2002 Order, which is the proper method for requesting reconsideration of an interlocutory order. See Local Rule 60.1 (2002).

Dr. Rogers also argues that his Cross–Motion is not untimely since he had previously argued that he needed more time to conduct sufficient discovery in this matter. See Cross–Motion at 9. The court, however, had expressly denied Dr. Rogers' Rule 56(f) request for continuance in its October 28, 2002 order. Moreover, the "new evidence" presented in Dr. Rogers' Cross–Motion does not bolster his argument that he is entitled to partial summary judgment on Plaintiff's declaratory relief claim.

Accordingly, the court DENIES Dr. Rogers' Cross–Motion for Partial Summary Judgment.

### II. BAD FAITH

■ In Hawaii, an insurer has a duty to "act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort

cause of action." *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 128, 920 P.2d 334, 342 (Haw.1996). In his Counterclaim, Dr. Rogers alleges that Plaintiff breached the covenant of good faith and fair dealing by initiating the instant action.

 In order to prevail on a claim of bad faith, Dr. Rogers must establish that Plaintiff unreasonably acted "without proper cause." *Id.* at 132–33, 920 P.2d at 346–47. "[T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payments of benefits will warrant recovery for compensatory damages ...." *Id.* at 133, 920 P.2d at 347. However, "conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith." *Id.*

Dr. Rogers argues that Plaintiff acted in bad faith because Dr. Rogers allegedly did not know that he had sleep apnea. Cross–Motion at 29. Without ruling on the merits of whether Dr. Rogers knew that he had sleep apnea when he applied for the insurance policy, it is undisputed that Dr. Rogers knew that he underwent UPP surgery in 1990 and that his application does not reflect that fact.

The court has already determined that a reasonable jury could decide the issue of fraud in Plaintiff's favor based upon Dr. Rogers' failure to include his 1990 UPP surgery on his application.[1] *See* October 28 Order at 16. Moreover, Plaintiff is

paying Dr. Rogers benefits under a reservation of rights while it seeks determination of whether it is obligated to pay him benefits at all. Thus, the court finds that Dr. Rogers will be unable to prove by a preponderance of the evidence that Plaintiff's filing of the instant lawsuit was based on an interpretation of the insurance policy that is unreasonable. The court finds, as a matter of law, that Plaintiff's conduct does not amount to a breach of the covenant of good faith and fair dealing and therefore GRANTS Plaintiff's Motion on this issue. Accordingly, the court also GRANTS Plaintiff's Motion on the issue of punitive damages, since Dr. Rogers only claims such damages in relation to his counterclaim that Plaintiff acted in bad faith.

## III. *FUTURE BENEFITS*

In his Counterclaim, Dr. Rogers argues that he is entitled to declaratory relief, binding Plaintiff to continue payment of disability benefits under the insurance policy for the remainder of Dr. Rogers' lifetime.

 "[A] plaintiff can recover a judgment regarding future benefits if, for example, the plaintiff is able to show that the insurer completely repudiated the contract." *Scherer v. Equitable Life Assurance Society of U.S.,* 190 F.Supp.2d 629, 633 (S.D.N.Y.2002). However, "an offer to perform made in accordance with the promisor's interpretation of the contract, if made in good faith although it may be

---

**1.** At the hearing, Dr. Rogers argued that *Best Place* required Plaintiff to conduct a thorough investigation before initiating its lawsuit in order to fulfill its duty to act in good faith. Dr. Rogers contended that genuine issues of material fact exist as to whether Plaintiff conducted such a thorough investigation, and therefore argued that summary judgment in Plaintiff's favor is inappropriate on the issue of bad faith.

*Best Place* does recognize that an insurer must thoroughly investigate the foundation

for its *denial of payments* in order to fulfill its duty to deal fairly and in good faith. *Id.* at 132, 920 P.2d at 346. Here, however, it is undisputed that Plaintiff is paying Dr. Rogers benefits under a reservation of rights. Plaintiff's payment of benefits under a reservation of rights does not amount to a *denial of payments* without a thorough investigation, and therefore is not automatic grounds for a bad faith claim.

erroneous, is not such a clear refusal to perform as to constitute an anticipatory breach." *Golf Carts, Inc. v. Mid–Pacific Country Club,* 53 Haw. 357, 360, 493 P.2d 1338, 1340 (Haw.1972). In order to prevail, Dr. Rogers must prove that Plaintiff's conduct amounted "to a distinct, unequivocal, and absolute refusal to perform." *Id.*

 The court finds, as a matter of law, that Plaintiff's conduct has not amounted to a repudiation of the insurance policy. The insurance policy specifically permits Plaintiff to use fraudulent misstatements to "void the Policy or deny any claim." Thus, Plaintiff is exercising rights provided by the insurance policy and therefore has not distinctly, unequivocally, or absolutely refused to perform under the contract. Accordingly, the court GRANTS Plaintiff's Motion for Summary Judgment on the issue of Dr. Rogers' claims for declaratory relief.

### CONCLUSION

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment; and DENIES Defendant's Cross–Motion for Partial Summary Judgment. Specifically, the court holds as follows:

1. the court DENIES Plaintiff's Motion for Summary Judgment on its declaratory relief claim;

2. the court GRANTS Plaintiff's Motion for Summary Judgment regarding all of the remaining claims in Defendant's Counterclaim (bad faith, declaratory relief for future benefits for the remainder of Dr. Rogers' lifetime); and

3. the court DENIES Defendant's Cross–Motion for Partial Summary Judgment.

Accordingly, Plaintiff's claim for declaratory relief based upon Dr. Rogers' alleged-

ly fraudulent statements is the only outstanding claim left in this action.

IT IS SO ORDERED.